UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

CHARLIE CRUZ and LINDA GRAHAM,

                                    Plaintiffs,                         **COMPLAINT**

           -against-                                Dkt. No.:

BERNSTEIN LITOWITZ BERGER & GROSSMAN LLP,

                                  Defendant.

------------------------------------------------------------------------X

       Plaintiffs Charlie Cruz and Linda Graham, by their attorneys Giskan Solotaroff & Anderson LLP, for their Complaint against Defendant Bernstein Litowitz Berger & Grossman LLP ("BLB&G"), allege as follows:

## PRELIMINARY STATEMENT

       1.      This is an action for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and the New York City Human Rights Law ("NYCHRL") on behalf of both Plaintiffs, as well as sexual orientation discrimination, in violation of Title VII of the Civil Rights Act ("Title VII") and the NYCHRL on behalf of Plaintiff Charlie Cruz.

       2.      Plaintiffs Cruz and Graham, who are 55 and 57 years old, respectively, spent decades working in administrative roles at the law firm Bernstein Litowitz Berger & Grossman LLP ("BLB&G" or the "Firm").  They were both excellent performers who had never been disciplined.

       3.      In 2018, a new management team was installed to oversee all Professional (non-Attorney) Staff, and with the new team came rampant ageism and a culture change.

4.      The new management team, led by Reid Horovitz, Robert Shah, and Catherine Blessing, worked quickly to enact changes at BLB&G.  More than ten members of the Professional Staff team who were over the age of 40 were terminated from their jobs and replaced by significantly younger workers.  Mr. Cruz and Ms. Graham were among the fired workers.

5.      The new management team at BLB&G has engaged in a pattern of favoring younger employees in employment decisions.

6.      Furthermore, Mr. Cruz also endured discrimination on the basis of his sexual orientation when he was employed by BLB&G.

## THE PARTIES

7.      Plaintiff Charlie Cruz resides in Ridgewood, New York.

8.      Plaintiff Linda Graham resides in Newark, New Jersey.

9.      Defendant Bernstein Litowitz Berger & Grossman LLP ("BLB&G") is a limited liability partnership organized under the laws of New York with its principal place of business in New York, New York.

## VENUE AND JURISDICTION

10.      This Court has jurisdiction over Plaintiffs' ADEA and Title VII claims pursuant to 28 U.S.C. § 1343 and § 1331.  Plaintiffs filed their respective Charges with the Equal Employment Opportunity Commission ("EEOC") on December 12, 2016.  The EEOC issued individual Right to Sue letters to Plaintiffs, attached hereto as Exhibit A, which Plaintiffs received on July 20, 2020.  This Court has jurisdiction over Plaintiffs' claims under the NYCHRL pursuant to 28 U.S.C. § 1367.

11.     Venue is properly before this Court pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to this action occurred in this District.

12.     This Court has personal jurisdiction over Defendant BLB&G because it operates and employed Plaintiffs within New York State.

## FACTS

*BLB&G's Discriminatory Treatment of Charlie Cruz*

13.     Charlie Cruz is a 55-year-old openly gay, Hispanic man.

14.     Mr. Cruz was hired by BLB&G in December 1994 to work in the firm's Office Services Department.  He worked in that department for several years.

15.     In 2001, BLB&G offered Mr. Cruz a position in the Finance Department in order to capitalize on Mr. Cruz's strong quantitative skills.  He worked directly under Controller Pravin Raval as the Controller's Assistant.  In that position, he was responsible for distributing payroll, working with vendors, reviewing fee applications, and creating reports regarding firm management and settlements.

16.     As part of his work, Mr. Cruz was trained in various accounting programs and was responsible for training new hires in the Finance Department.

17.     During his tenure at BLB&G, Mr. Cruz received positive reviews, regular raises, and regular bonuses.  There were no complaints about Mr. Cruz's job performance.  Partners at the firm regularly told him that BLB&G was a big family, and that they take care of their family.

18.     In 2018, after a dispute among the Law Partners, several management changes took place at BLB&G.  A new management team was installed to oversee all Professional (non-Attorney) Staff, and with the new team came a significant culture change that appeared to obviously favor younger employees in hiring decisions.

19.     The new management team was led by Chief Operating Officer Reid Horovitz, Director of Finance Robert Shah, and later, Director of Human Resources Catherine Blessing.

20.     With the new management team in place, personnel changes happened rapidly. More than ten members of the Professional Staff team who were over the age of 40 were terminated from their jobs and replaced by significantly younger workers.  Mr. Cruz and Ms. Graham were among the fired workers.

21.     The changes began in early 2018 with the departure of Edward Grossman, Managing Partner of BLB&G, who was in his sixties.  He was replaced by Mr. Horovitz, who was significantly younger than Mr. Grossman.

22.     Shortly thereafter, Mr. Raval, the Controller, who was in his seventies, announced that he would be leaving the firm.  It is Mr. Cruz's understanding that Mr. Raval was involuntarily pushed out.

23.     In June of 2018, Robert Shah was hired to replace Mr. Raval, thereby becoming Mr. Cruz's direct supervisor.  During the summer of 2018, Mr. Raval worked with Mr. Shah to show him how to run the Finance Department.

24.     During that transition period, and continuing for months thereafter, Mr. Shah refused to speak with Mr. Cruz.  Mr. Shah only met with Mr. Cruz two times, despite being his direct supervisor, and would often go entire days without speaking to Mr. Cruz.

25.     Mr. Shah openly and obviously treated Mr. Cruz with disdain, so much so that several coworkers expressed to Mr. Cruz that they thought Mr. Shah was treating him in a hostile manner.

26.     In contrast, Mr. Shah was friendly with Mr. Cruz's straight colleagues, greeted them in the morning, and held meetings with them.

27.     Additionally, Mr. Shah spoke openly and in a voice that was audible to Mr. Cruz and others about aging, making disparaging remarks about gray hair and "looking old."  Mr. Cruz has gray hair.

28.     Mr. Cruz continued to do his assigned work.

29.     Meanwhile, in September 2018, several of Mr. Cruz's colleagues who were over the age of 50 were terminated.  They were all strong performers, and they were all replaced with much younger workers.

30.     Mr. Cruz grew concerned, based on both Mr. Shah's hostility toward him as a gay man and based on what he perceived to be a pattern of ageist termination decisions.  To obtain guidance about how to address this mistreatment, he spoke with Genie Principe, BLB&G's Director of Human Resources ("HR").  He explained to Ms. Principe that Mr. Shah refused to speak with him, and that he believed Mr. Shah was homophobic and was discriminating against Mr. Cruz because he is openly gay.

31.     Ms. Principe responded that a new person, Natalia O'Donnell, would be joining the Finance Department, and hopefully she would be a "good buffer" between Mr. Shah and Mr. Cruz.  Ms. Principe did not explain why a "buffer" was needed between them.

32.     Ms. O'Donnell, a woman in her mid-30s, had been hired to replace Eleanor Derrick, who was terminated in the fall of 2017.  Ms. Derrick was in her late 50s at the time of her termination.

33.     After Ms. O'Donnell's hire, despite Ms. Principe's assurances, nothing changed. Mr. Shah continued to actively ignore Mr. Cruz, while speaking with Mr. Cruz's straight, younger colleagues, such as Ms. O'Donnell.

34.     During Mr. Cruz's year-end review with Mr. Shah, Mr. Cruz brought up the lack of communication from Mr. Shah.  Mr. Shah did not address the issue, and instead told Mr. Cruz he needed more training in Excel, which he would receive.

35.     In 2019, Ms. Principe, who was approximately 60 years old, was replaced by Catherine Blessing as the Director of Human Resources.  Ms. Blessing is in her 30s.

36.     Mr. Cruz followed up with Ms. Blessing regarding the Excel training – but he never received it.

37.     In early 2019, Mr. Cruz was walking back to desk and noticed Mr. Shah and Ms. O'Donnell were pointing at Mr. Cruz's computer screen and laughing.  Mr. Cruz had an image of a rainbow Puerto Rican flag on the desktop of his computer.  The rainbow represents LGBTQ+ pride.

38.     When Mr. Shah saw Mr. Cruz approaching his desk, Mr. Shah abruptly stopped laughing.  Mr. Cruz asked what was so funny.  Mr. Shah just walked away without saying anything.

39.     During the spring of 2019, it became clear to Mr. Cruz that Ms. O'Donnell, the woman in her mid-30s who had replaced Ms. Derrick, was being trained to perform some of Mr. Cruz's tasks.

40.     Mr. Shah knew that Mr. Cruz was over 50 years old in part because he knew that Mr. Cruz had been working at BLB&G for almost 25 years.

41.     On June 27, 2019, Mr. Shah terminated Mr. Cruz's employment, six months shy of Mr. Cruz's 25th anniversary.

42.     Mr. Cruz was replaced by a 22-year-old woman.

43.    As a result of the termination of Mr. Cruz's employment, he has suffered loss of wages and other benefits and emotional distress.

***BLB&G's Discriminatory Treatment of Linda Graham***

44.    Linda Graham is a 57-year-old African American woman.

45.    Ms. Graham was hired by BLB&G in 2002 as a Temporary Legal Secretary/Word Processor. In that position, she was tasked with creating and editing documents, entering time for attorneys, and assisting secretaries with overflow work.

46.    In February of 2003, Ms. Graham was hired permanently as the Word Processing Specialist.  She was responsible for creating, editing, and fine-tuning documents; training personnel on the word-processing software; and creating word-processing templates and best practices, among other things.

47.    When new attorneys joined the firm, Ms. Graham would train them using the document templates and worked closely with the Information Technology Department to ensure all templates were being used properly.

48.    Ms. Principe, the Director of HR, was Ms. Graham's supervisor when she was hired as the Word Processing Specialist.  Ms. Principe repeatedly gave Ms. Graham positive reviews, raises, and bonuses.

49.    In January 2019, Ms. Principe was replaced by Catherine Blessing who became Ms. Graham's supervisor.

50.    Ms. Blessing never made an attempt to get to know Ms. Graham or to learn about what she did at BLB&G.  In contrast, Ms. Blessing spoke at length with and got to know the younger workers well.

51.     On June 27, 2019, Ms. Graham was terminated by Ms. Blessing and Reid

Horovitz, BLB&G's new Chief Operating Officer.  Ms. Graham was told that her position was

being eliminated.

52.     Ms. Graham, who was among the oldest of the legal secretaries, had the strongest

set of skills of all of them.  Absent age discrimination, to the extent legal secretaries had to be

terminated, the firm should have retained Ms. Graham and terminated younger legal secretaries

who were less skilled than Ms. Graham.

53.     Mr. Horowitz and Ms. Blessing knew Ms. Graham's age because they had access

to her employee file, which contained her date of birth, and knew she been working at BLB&G

for nearly 20 years.

54.     As a result of the termination of Ms. Graham's employment, she has suffered loss

of wages and other benefits and emotional distress.

## FIRST CLAIM FOR RELIEF
(Age Discrimination in Violation of ADEA)

55.     Plaintiffs repeat and re-allege the allegations contained in the preceding

paragraphs above as if fully set forth herein.

56.     Defendant discriminated against Plaintiffs in the terms and conditions of their

employment based on their ages in violation of the Age Discrimination in Employment Act, 29

U.S.C. § 621.

## SECOND CLAIM FOR RELIEF
(Age Discrimination in Violation of NYCHRL)

57.     Plaintiffs repeat and re-allege the allegations contained in the preceding

paragraphs above as if fully set forth herein.

58.     Defendant discriminated against Plaintiffs in the terms and conditions of their employment based on their ages in violation of the Administrative Code of the City of New York § 8-107 *et seq.*

### THIRD CLAIM FOR RELIEF
(Sexual Orientation Discrimination in Violation of Title VII on Behalf of Plaintiff Cruz)

59.     Plaintiff Cruz repeats and re-alleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

60.     Defendant discriminated against Plaintiff Cruz in the terms and conditions of his employment based on his sexual orientation in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

### FOURTH CLAIM FOR RELIEF
(Sexual Orientation Discrimination in Violation of NYCHRL on Behalf of Plaintiff Cruz)

61.     Plaintiff Cruz repeats and re-alleges the allegations contained in the preceding paragraphs above as if fully set forth herein.

62.     Defendant discriminated against Plaintiff Cruz in the terms and conditions of his employment based on his sexual orientation in violation of the Administrative Code of the City of New York § 8-107 *et seq.*

WHEREFORE, Plaintiffs demands judgment:

  A. Reinstating Plaintiffs' employment and enjoining Defendant from harassing Plaintiffs on the basis of their ages and, in the case of Plaintiff Cruz, on the basis of his sexual orientation, in the terms and conditions of their employment;

  B. Awarding Plaintiffs back pay;

C.  Awarding Plaintiffs compensatory damages, including but not limited to damages for

emotional distress;

D.  Awarding Plaintiffs punitive damages;

E.  Awarding reasonable attorneys' fees, costs, and expenses; and

Granting such other legal and equitable relief to the Plaintiff as the Court may deem just and

equitable.

## JURY DEMAND

Plaintiffs demand trial by jury of all issues as of right by a jury.

Dated:          New York, New York
                October 14, 2020

                                    **GISKAN, SOLOTAROFF & ANDERSON LLP**

                                    By:     Amy E. Robinson
                                            Jason L. Solotaroff
                                            90 Broad Street, 10th Floor
                                            New York, New York 10004
                                            646-964-9609
                                            arobinson@gslawny.com
                                            jsolotaroff@gslawny.com
                                            *ATTORNEYS FOR PLAINTIFFS*