Docket No. 20-CV-8596 (DF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLIE CRUZ and LINDA GRAHAM,

Plaintiffs,

-against-

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP,

Defendant.

# MEMORANDUM OF LAW
# IN SUPPORT OF DEFENDANT'S
# MOTION FOR SUMMARY JUDGMENT

COLLAZO & KEIL LLP

*Attorneys for Defendant*

John P. Keil

747 Third Avenue, 25th Floor

New York, New York 10017

TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS ........................................................................................2

ARGUMENT .............................................................................................................6

      I.       THE APPLICABLE LEGAL STANDARD...........................................6

            A.  Summary Judgment .................................................................6

            B.  Claims Under the ADEA .........................................................7

            C.  Claims Under Title VII ............................................................8

            D.  Claims Under the NYCHRL .....................................................9

      II.     CRUZ HAS FAILED TO PRODUCE EVIDENCE OF AGE
            DISCRIMINATION ............................................................10

      III.    CRUZ HAS FAILED TO PRODUCE EVIDENCE OF DISCRIMINATION
            ON THE BASIS OF SEXUAL ORIENTATION.................................13

      IV.    CRUZ HAS FAILED TO ESTABLISH PRETEXT ...........................15

CONCLUSION...........................................................................................................18

<strong>TABLE OF AUTHORITIES</strong>

<u>**CASES**</u>

*Allen v. Cuomo*, 100 F. 3d 253, 258 (2d Cir. 1996)........................................................................7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) .....................................................6, 7

*Angione v. Sikorsky Aircraft Corp.*, 199 F. Supp. 3d 628, 639 (D. Conn. 2016) ..........................11

*Bennett v. Health Mgt. Sys., Inc.*, 92 A.D.3d 29, 45, 936 N.Y.S.2d 112 (1st Dep't 2011) .............9

*Boyle v. McCann-Erickson, Inc.*, 949 F. Supp. 1095, 1103 (S.D.N.Y. 1997) ...............................11

*Cargian v. Breitling USA, Inc.*, 2021 WL 4780327, at *8 (S.D.N.Y. Sept. 13, 2021)...............8, 9

*Chery v. City University of New York*, 2008 WL 858989, at *4 (E.D.N.Y. Mar. 31, 2008) .........14

*Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014).................................................12

*Downey v. Adloox, Inc.*, 2018 WL 5266875 (S.D.N.Y. Oct. 23, 2018)........................................16

*Edwards v. New York State Office of Mental Health*,
    2017 WL 666227 (E.D.N.Y. Feb. 20, 2017)........................................................................13

*Fagan v. N.Y. State Elec. & Gas Corp.*, 186 F.3d 127, 134 (2d Cir. 1999)..................................17

*Feurtado v. City of New York*, 337 F. Supp. 2d 593, 599–600 (S.D.N.Y. 2004) ...........................7

*Fiorillo v. United Techs. Corp.*, 2016 WL 1118789, at *21 (D.Conn. Mar. 21, 2016)................14

*Forrest v. Jewish Guild for the Blind*,
    3 N.Y.3d 295, 305, 786 N.Y.S.2d 382, 819 N.E.2d 998 (2004).....................................9, 10

*Futrell v. J.I. Case*, 38 F.3d 342, 348 (7th Cir. 1994) .................................................................17

*Gertskis v. New York City Dep't of Health & Mental Hygiene*,
    2009 WL 812263 (S.D.N.Y. Mar. 26, 2009) .....................................................................14

*Gilani v. Teneo, Inc.*, 2021 WL 3501330, at *16 (S.D.N.Y. Aug. 4, 2021) ...........................11, 17

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) ......................................7, 8

*Grant v. Continental Casualty Co.*, 2015 WL 1499724, at *9 (S.D.N.Y. Mar. 30, 2015)...........14

iii

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009) ...............................................7

*Hamburg v. New York Univ. Sch. of Med.*,
    155 A.D.3d 66, 72–73, 62 N.Y.S.3d 26, 32–33 (2017) .................................... 9-12

*Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 186 A.D.3d 58, 67,
    126 N.Y.S.3d 98, 105 (2020) ........................................................................17

*Jeffreys v. City of New York*, 426 F. 3d 549, 554 (2d Cir. 2005) ....................................7

*Kerman-Mastour v. Financial Industry Regulatory Authority, Inc.*,
    814 F.Supp.2d 355, 368-369 (S.D.N.Y. 2011) ...................................................15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) .............................7

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)........................... 7-9

*McFadden v. Mem'l Sloan–Kettering Cancer Ctr.*,
    2006 WL 2930200, at *6 (S.D.N.Y. Oct. 11, 2006) ...........................................17

*Meiri v. Dacon*, 759 F. 2d 989, 998 (2d Cir. 1985) ....................................................6

*Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 127, 946 N.Y.S.2d 27 (1st Dept.2012)...........10

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)...............15

*Nieves v. Avalonbay Communities*, 2007 WL 2422281, at *10 (D.Conn. Aug. 23, 2007)............14

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)................................8

*O'Sullivan v. New York Times*, 37 F. Supp. 2d 307, 319 (S.D.N.Y. 1999)............................11, 17

*Palencar v. New York Power Auth.*, 834 F. App'x 647, 650 (2d Cir. 2020)....................................8

*Parker v. Sony Pictures Entm't, Inc.*, 260 F. 3d 100, 111 (2d Cir. 2001) ........................................7

*Peters v. Mount Sinai Hosp.*, 2010 WL 1372686, at *10 (S.D.N.Y. Mar. 30, 2010) ...................14

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)........................................8

*Shipkevich v. New York & Presbyterian Hosp.*,
    2020 WL 5796202, at *2 (S.D.N.Y. Sept. 29, 2020)........................................................7

*Stouter v. Smithtown Cent. Sch. Dist.*, 687 F. Supp. 2d 224, 234–35 (E.D.N.Y. 2010) ...............11

*Sollazzo v. Just Salad Rest.*, 2018 WL 1273661, at *2 (S.D.N.Y. Mar. 5, 2018)...........................6

*Testa v. CareFusion*, 305 F. Supp. 3d 423, 436 (E.D.N.Y. 2018).................................................17

*Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010)...........................................................8

*Waldorf v. Liberty Maint., Inc.*, 2007 WL 942103, at *8 (S.D.N.Y. Mar. 29, 2007) ...................17

*Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78 n. 27, 872 N.Y.S.2d 27 (2009).........10

*Williams v. Victoria's Secret*, 2017 WL 1162908, at *8 (S.D.N.Y. Mar. 28, 2017)............... 11-12

*Wilson v. Family Dollar Stores of New York, Inc.*,
    2008 WL 4426957, at *8 (E.D.N.Y. Sept. 25, 2008)..........................................................14

## **STATUTES**

29 U.S.C. § 626 et seq...............................................................................................................1

42 U.S.C. §2000e et seq............................................................................................................1

N.Y.C. Admin. Code, § 8–101 et seq .......................................................................................1

**Preliminary Statement**

Defendant Bernstein Litowitz Berger & Grossmann LLP (the "Firm") moves for summary judgment pursuant to Fed.R.Civ.P. 56 to dismiss the Complaint of plaintiff Charlie Cruz in its entirety. Cruz, formerly an accounting clerk in the Firm's Finance Department, claims that he suffered discrimination on the basis of age and sexual orientation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 626 et seq. ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. ("Title VII"), and the New York City Human Rights Law, New York City Administrative Code, § 8–101 et seq. ("NYCHRL"), when he became one of six office support employees selected for layoff from the Firm's New York office in June 2019 on the grounds of inadequate work performance, underutilization, and insufficient skills.

Cruz cannot establish a material issue of fact regarding his work performance or the Firm's reasons for separating him from employment. He admits that no offensive references to age or sexual orientation were made at any point during his employment at the Firm, and bases his discrimination claim entirely on his subjective interpretation of a manager's demeanor and facial expression, which is legally insufficient. As late as 2019, the year of his separation from employment, Cruz did much of his work using pencil and paper and admitted at his deposition that he did not know how to use Microsoft Excel, a widely used piece of business software. Cruz also admitted that after he was directed by new management to acquire some proficiency in Excel, and was directed to approach the Director of the Department when he had idle time or capacity for additional work, he did not do so. Instead, as Cruz's customary tasks became automated, he was frequently found on smoking breaks or sleeping at his desk. Cruz was therefore found not to be contributing value to the department, and he was replaced by an employee with an accounting

1

degree who assumed broader and more sophisticated responsibilities than Cruz was qualified to perform.

By contrast, the Finance Department's other accounting clerk, who happens to be older than Cruz, became proficient in Microsoft Excel after receiving the same training opportunities as Cruz, and she remains employed by the Firm today. Accordingly, Cruz's claims should be dismissed upon summary judgment.

The other plaintiff in this matter, Linda Graham, has agreed to withdraw her claims pursuant to settlement.

## Statement of Facts

*The Parties*

Bernstein Litowitz Berger & Grossmann LLP is a law firm with a primary office in New York, and smaller offices in Los Angeles, Illinois, Louisiana, and Delaware (56.1 St. ¶ 109)[1]. The Firm was founded in 1983, and one of the focuses of its practice is the representation of institutional investors and class representatives in securities litigation (*id*.).

Charlie Cruz began employment with the Firm in 1994 (56.1 St. ¶ 1). He was most recently employed in the Firm's Finance Department as an Accounting Clerk (56.1 St. ¶ 3). Cruz's highest level of educational achievement is a high school diploma (56.1 St. ¶ 6); although the Complaint alleges that he possesses "strong quantitative skills," he does not recognize this term (56.1 St. ¶ 7), does not know how to use spreadsheet software (56.1 St. ¶ 9), and does not have any specialized training in mathematics or finance (56.1 St. ¶ 10).

---

[1] Citations to paragraphs from the Firm's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 are designated herein as "56.1 St. ¶ ."

*The Firm's Restructuring Decisions*

In 2018, the Firm recruited Reid Horovitz to serve as its Chief Operating Officer (56.1 St. ¶ 110). Shortly thereafter, the Firm's Controller, Pravin Raval, announced his retirement (56.1 St. ¶ 12), and the Firm recruited Robert Shah, who had prior experience overseeing financial departments in a number of law firms, to assume and expand upon Raval's responsibilities in the newly created role of Director of Finance starting in May 2018 (56.1 St. ¶ 13). Around the same time, the Firm's Director of Human Resources, Genie Principe, hired Catherine Blessing to serve as Assistant Director of Human Resources, and announced her own retirement at the end of the year (56.1 St. ¶¶ 14, 16). Blessing was charged, among other responsibilities, with modernizing the Firm's Human Resources processes (56.1 St. ¶ 15), and upon Principe's retirement at the end of 2018, Blessing was promoted to the role of Director of Human Resources (56.1 St. ¶ 16). In conjunction with these changes in management, the Firm reviewed its operations with the goal of elevating the professionalism of the internal support services offered to the Firm's attorneys (56.1 St. ¶ 17). Prior to the employment decisions at issue here, the Firm closed its office in San Diego (56.1 St. ¶ 18) and restructured the Litigation Support Department to better serve the attorneys' electronic discovery needs (56.1 St. ¶ 19).

Before Shah's arrival at the Firm, Raval had supervised three employees in the Finance Department, consisting of Cruz, Lumturie ("Lumka") Krasniqi, and Eleanor Derrick, who all exercised primarily clerical functions and shared the job title of Accounting Clerk (56.1 St. ¶ 20). Shah determined that Cruz's skills were inadequate and that he did not have substantive work to do (56.1 St. ¶ 21). Derrick's employment was terminated in August 2018 (56.1 St. ¶ 23). Derrick was not replaced; instead, in or about August 2018, the Firm hired an accountant named Natalia O'Donnell into the newly created role of Accounts Payable Manager to issue checks, make journal

entries, and run the department in Shah's absence (56.1 St. ¶ 24). O'Donnell worked closely with both Cruz and Krasniqi (*id*.).

O'Donnell quickly determined that Cruz lacked the skills or motivation required to perform effectively in the Finance Department of a law firm handling significant and high-profile litigation (56.1 St. ¶ 26). Cruz's job responsibilities, at the time of O'Donnell's arrival, included dispersing petty cash, data entry on financial transactions for large cases on the Firm's docket, and responding to requests for expense data in connection with attorney fee applications (56.1 St. ¶ 28). However, Cruz did not appear to have any financial training, and had no familiarity whatsoever with Microsoft Excel (56.1 St. ¶¶ 9-10). As a result, when Shah directed Cruz to prepare an analysis in Excel, Cruz typically responded by doing the work with pencil and paper (56.1 St. ¶¶ 41, 113). This process was time-consuming, and fraught with errors to the point that O'Donnell frequently had to repeat and correct Cruz's work (56.1 St. ¶ 42). One of Cruz's more time-consuming assignments required him to manually transfer certain expense information (such as check dates and check amounts) between two pieces of business software that were not perfectly compatible; Shah arranged for some computer code to be prepared in early 2019 that automated this task, leaving Cruz with significantly less work to do (56.1 St. ¶ 111).

Shah advised Cruz about upcoming changes in the Finance Department and invited Cruz to talk to him about those changes, but Cruz showed no interest in doing so (56.1 St. ¶ 112). Shah highlighted his concerns in Cruz's 2018 performance evaluation, which noted his desire to see Cruz learn Microsoft Excel and take on additional responsibilities when he had idle time (56.1 St. ¶ 45); Cruz did not respond to this (56.1 St. ¶¶ 48, 51, 52). O'Donnell more directly approached both Cruz and Krasniqi and offered them individual coaching on Microsoft Excel to enhance their contributions to the Firm (56.1 St. ¶ 54). Krasniqi quickly became proficient in Excel as a result

of this coaching (56.1 St. ¶ 58); Cruz, despite having the same opportunities, did not (56.1 St. ¶ 9). It was also common knowledge that Cruz commonly slept at his desk—O'Donnell despaired of waking him up and resorted to throwing paper clips at him from her adjoining cubicle (56.1 St. ¶¶ 61-62)—and took extended cigarette breaks that appeared longer in duration than the time he spent in the office (56.1 St. ¶ 63).  Although Cruz claims that Shah refused to speak to him, there were many occasions where his managers went looking for Cruz to discuss work matters, but could not find him (56.1 St. ¶ 64).

By contrast, Krasniqi (who is slightly older than Cruz, 56.1 St. ¶ 99) was very responsive to O'Donnell's offer of training and applied herself to learning Excel (56.1 St. ¶ 58).  O'Donnell concluded that Krasniqi had become proficient in Excel and informed Shah of this (56.1 St. ¶¶ 58, 71).

*The Decision to Terminate Cruz*

In late May 2019, the Firm assessed its support staff in New York, including secretaries, receptionists, paralegals, office services employees, accounting and IT personnel, and other non-professional staff, and concluded that out these roughly 50 employees, six were either underutilized or underperforming, and should be considered for either replacement or position elimination (56.1 St. ¶¶ 67, 68).  These six employees consisted of one paralegal, one accounting clerk (Cruz), one Office Services employee, two Secretaries, and the only Word Processing Specialist (plaintiff Linda Graham) (56.1 St. ¶ 114).

As noted above, after Shah became familiar with Cruz's work performance, he concluded that Cruz's work – performing financial tasks only with pencil and paper in 2019 – was highly inefficient and unproductive, and that Cruz had no intention of increasing his productivity or acquiring additional skills (56.1 St. ¶¶ 69, 113).  After Cruz's separation from employment,

5

O'Donnell reviewed Cruz's desk and identified additional areas of concern, such as invoices up to eight years old that had not been filed and invoices that had been paid but had not been entered in the accounting system or allocated to different cases (56.1 St. ¶ 75).  These discoveries, made after Cruz's termination, confirmed for the Firm that Cruz had no interest in fulfilling his basic job responsibilities.

Following Cruz's departure, the Firm hired Laura Villatoro (56.1 St. ¶ 76).  Villatoro was a recent college graduate with an Associate Degree in Accounting and a Bachelor's Degree in Business Administration in Accounting, and also had five years of work experience handling the finances of a variety of businesses (56.1 St. ¶ 78).  Because of Villatoro's more advanced training, Shah assigned her tasks that Cruz had been unqualified to perform (56.1 St. ¶ 79).

<strong>Argument</strong>

I.    <u>The Applicable Legal Standard</u>

A.  <u>Summary Judgment</u>

Summary judgment is appropriate where the movant shows that there is no genuine dispute as to any material fact, Fed. R. Civ. P. 56(a), and remains appropriate even in fact-intensive discrimination cases. *Sollazzo v. Just Salad Rest.*, 2018 WL 1273661, at *2 (S.D.N.Y. Mar. 5, 2018).  The Second Circuit has stated that "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to ... other areas of litigation." *Meiri v. Dacon*, 759 F. 2d 989, 998 (2d Cir. 1985).

When determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, the nonmoving party "must come forward with specific facts showing that there is a

6

genuine issue for trial," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F. 3d 549, 554 (2d Cir. 2005) (internal quotation marks and citations omitted).  In other words, the nonmovant must offer concrete evidence from which a reasonable juror could return a verdict in his favor.  *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "A defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F. 3d 253, 258 (2d Cir. 1996); *accord Parker v. Sony Pictures Entm't, Inc.*, 260 F. 3d 100, 111 (2d Cir. 2001) ("A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must designate specific facts showing that there is a genuine issue for trial") (internal punctuation and citation omitted); *Feurtado v. City of New York*, 337 F. Supp. 2d 593, 599–600 (S.D.N.Y. 2004).

B.  <u>Claims under the ADEA</u>

Claims for age discrimination in violation of the ADEA are assessed under the *McDonnell Douglas* burden-shifting framework, as modified in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).  *See   Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)); *accord Shipkevich v. New York & Presbyterian Hosp.*, 2020 WL 5796202, at *2 (S.D.N.Y. Sept. 29, 2020).  Under the *McDonnell Douglas* paradigm, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802.  If the plaintiff does so, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* Unlike in Title VII cases, if a defendant provides a "legitimate, non-discriminatory reason" for the

employment action, a plaintiff cannot merely show that age was a contributing factor to the adverse employment action to prevail; rather, he must show that age was the "but-for" cause. *Gorzynski*, 596 F.3d at 106. Importantly, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). As a result, it is not sufficient for the fact-finder to disbelieve the employer's explanation; rather, "the fact-finder must believe the plaintiff's explanation of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). In other words, the plaintiff must always prove that the conduct at issue actually constituted discrimination. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

C. Claims Under Title VII

Claims under Title VII alleging employment discrimination on the basis of sexual orientation are also evaluated under the three-step burden shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Palencar v. New York Power Auth.*, 834 F. App'x 647, 650 (2d Cir. 2020) (sexual orientation claim under Title VII; no reasonable juror could find plaintiff was terminated because of sexual orientation rather than combative behavior). To establish a prima facie case for discrimination, plaintiff must show (1) that he is a member of a protected class; (2) that he was qualified for his position; (3) that he suffered adverse employment action; and (4) that the circumstances under which the adverse employment action occurred give rise to an inference of discrimination based on plaintiff's membership in the protected class. *Cargian v. Breitling USA, Inc.*, 2021 WL 4780327, at *8 (S.D.N.Y. Sept. 13, 2021). If the plaintiff does so, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. Once defendant

8

rebuts the presumption of discrimination with such a showing, to avoid summary judgment the plaintiff must prove that the employer's stated reasons are merely pretext for a discriminatory motive; the plaintiff has the ultimate burden of persuasion to demonstrate that the challenged employment decision was the result of intentional discrimination. *Cargian v. Breitling USA, Inc*., 2021 WL 4780327, at *10 (S.D.N.Y. Sept. 13, 2021).

D.   Claims Under the NYCHRL

Claims for employment discrimination in violation of the NYCHRL are analyzed separately from their state and federal counterparts and apply different legal standards: state courts have held that a defense motion for summary judgment in an action brought under the NYCHRL must be analyzed under both the familiar framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973), and also under a "mixed motive" framework. *Hamburg v. New York Univ. Sch. of Med*., 155 A.D.3d 66, 72–73, 62 N.Y.S.3d 26, 32–33 (2017). Summary judgment dismissing a claim under the NYCHRL should be granted if no jury could find defendant liable under any of the evidentiary routes—*McDonnell Douglas*, mixed motive, 'direct' evidence, or some combination thereof. *Bennett v. Health Mgt. Sys., Inc.*, 92 A.D.3d 29, 45, 936 N.Y.S.2d 112 (1st Dep't 2011).

As interpreted by New York courts, the *McDonnell Douglas* framework and the mixed motive framework diverge only after the plaintiff has established a prima facie case of discrimination (as more fully described below) and the defense has responded to that prima facie case by presenting admissible evidence of legitimate, independent, and nondiscriminatory reasons to support its employment decision. *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305, 786 N.Y.S.2d 382, 819 N.E.2d 998 (2004). At that point, under *McDonnell Douglas*, the burden shifts to the plaintiff to produce evidence tending to "prove that the legitimate reasons proffered by the

defendant were merely a pretext for discrimination" (*id.*).  By contrast, under the mixed motive analysis, the plaintiff may defeat the defendant's evidence of legitimate reasons for the challenged action by coming forward with evidence from which it could be found that unlawful discrimination was one of the motivating factors, even if it was not the sole motivating factor, for the adverse employment decision.  *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 127, 946 N.Y.S.2d 27 (1st Dept.2012).  Combining the two approaches, where the plaintiff has made out a prima facie case of discrimination, he or she may defeat a defense summary judgment motion based on evidence of a legitimate, nondiscriminatory reason for the adverse action by coming forward either with evidence that the defendant's stated reasons were false and that discrimination was the real reason, *Forrest*, 3 N.Y.3d at 305, 786 N.Y.S.2d 382, 819 N.E.2d 998, or with evidence that discrimination was one of the motivating factors for the defendant's conduct. *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78 n. 27, 872 N.Y.S.2d 27 (2009).  *See generally Hamburg v. New York Univ. Sch. of Med.*, 155 A.D.3d 66, 72–73, 62 N.Y.S.3d 26, 32–33 (2017).


II.     <u>Cruz Has Failed To Produce Evidence of Age Discrimination</u>

Cruz has failed to state a prima facie case of age discrimination, and his claim should be dismissed upon summary judgment, because the only evidence he has offered in support of his claim is a comment Shah made about Shah's own gray hair (56.1 St. ¶ 98).  Cruz is aware of no disparaging comments by Shah (or others) at the Firm regarding Cruz's age (56.1 St. ¶¶ 91, 96), and admits that after the Firm's restructuring in 2019, much of the remaining workforce was over 40 years old (56.1 St. ¶ 101).  In addition, the Firm's other Accounting Clerk, Krasniqi, is older than Cruz and remains employed there (56.1 St. ¶¶ 99, 103).

Cruz's remaining argument for age discrimination appears to concern the hiring of an accountant, Laura Villatoro, after his departure.   Shah testified, however, that Villatoro's

responsibilities were substantially different from Cruz's (56.1 St. ¶ 79), and that Cruz's responsibilities were absorbed by Krasniqi and O'Donnell (56.1 St. ¶ 77); where, as here, the prior and subsequent employees have different skills and one cannot replace the other, plaintiff cannot establish a prima facie case of discrimination because there has been no "replacement" by a younger employee. *Boyle v. McCann-Erickson, Inc.*, 949 F. Supp. 1095, 1103 (S.D.N.Y. 1997) ("Hence, they had different skills and one could not replace the other."). *See also O'Sullivan v. New York Times*, 37 F. Supp. 2d 307, 319 (S.D.N.Y. 1999) ("The law is also clear that allegations of replacement by younger workers do not, without more, prove discrimination"); *Angione v. Sikorsky Aircraft Corp.*, 199 F. Supp. 3d 628, 639 (D. Conn. 2016) (same; no inference of discrimination); *Stouter v. Smithtown Cent. Sch. Dist.*, 687 F. Supp. 2d 224, 234–35 (E.D.N.Y. 2010) (same).

On this record, Cruz's claims of age discrimination should be dismissed because he has failed to present evidence suggesting that age played any factor in the decision to separate him from employment. *Gilani v. Teneo, Inc.*, 2021 WL 3501330, at *16 (S.D.N.Y. Aug. 4, 2021) (summary judgment appropriate where plaintiff has not presented any statements reflective of bias against those in a protected class or pointed to conduct that would reasonably lead a jury to conclude that Defendants more likely than not harbored a discriminatory motive when firing Plaintiff); *Hamburg v. New York Univ. Sch. of Med.*, 155 A.D.3d 66, 76, 62 N.Y.S.3d 26, 35 (2017) (summary judgment appropriate where plaintiff had no evidence of comments by leadership revealing bias, and no circumstantial evidence).

At most, Cruz's evidence rests entirely on comments Shah made about himself, about Shah's own age, and the stress of Shah's job, but this is insufficient to establish discriminatory animus against Cruz. *Williams v. Victoria's Secret*, 2017 WL 1162908, at *8 (S.D.N.Y. Mar. 28,

2017) (plaintiff failed to state a claim of age discrimination based on manager's comment about growing older himself).  *See also Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) ("Comments about another employee's age, removed from any context suggesting that they influenced decisions regarding [plaintiff's] own employment, do not suffice to create a genuine issue of fact as to whether age was the but-for cause of [his] termination.").

Nor can Cruz establish discriminatory animus by reference to similarly situated comparators, because Krasniqi – a year older than Cruz – remains at the Firm, and Villatoro, due to her accounting degree, was more qualified (56.1 St. ¶¶ 78-79, 99).  *Cf. Hamburg v. New York Univ. Sch. of Med.*, 155 A.D.3d 66, 77, 62 N.Y.S.3d 26, 35 (2017) (absent evidence that younger employees of equal or lesser qualifications than plaintiff received more favorable treatment, "the retention of three [employees] of essentially the same age as plaintiff completely negates any possible inference that the nonrenewal of [plaintiff's] contract was based, in whole or in part, on bias against people of her age cohort").

Although the court is required to examine claims under New York City law separately, even under the NYCHRL's more liberal standard, a plaintiff must plead facts giving rise to an inference that Plaintiff's termination was motivated by age discrimination.  In the absence of discriminatory comments, and especially in light of the defendant's decision to retain an older employee, Cruz cannot meet this burden.  *Williams v. Victoria's Secret*, 2017 WL 1162908, at *9 (S.D.N.Y. Mar. 28, 2017); *Hamburg v. New York Univ. Sch. of Med.*, 155 A.D.3d 66, 77, 62 N.Y.S.3d 26, 35 (2017).

III.    Cruz Has Failed to Produced Evidence of
        <u>Discrimination on the Basis of Sexual Orientation.</u>

Cruz has failed to state a prima facie case of discrimination on the basis of sexual orientation, and his claim should be dismissed upon summary judgment, because the only evidence he has offered in support of his claim is an arbitrary reading of Shah's facial expressions during their interactions (56.1 St. ¶¶ 80, 88), and an alleged incident at which, Cruz claims, he came across Shah and O'Donnell laughing at Cruz's computer screensaver but not commenting on it (56.1 St. ¶ 80).[2]  Although Cruz claims that his computer screen depicted a Puerto Rican flag in rainbow colors, neither Shah nor O'Donnell remember the colors, and deny the incident occurred (56.1 St. ¶ 80-81).[3]  (Even here, Cruz does not allege that any comments were made.)  Cruz complains that Shah was aloof in general, but describes his own working relationship with O'Donnell as cordial (56.1 St. ¶ 102).  He acknowledges that no one at the Firm, including Shah, ever made any disparaging comments or slurs on the basis of sexual orientation (56.1 St. ¶¶ 89, 90, 93), that no one at the Firm ever expressed any political views that made him uncomfortable (56.1 St. ¶ 94), and no one at the Firm showed any disrespect for the Firm's anti-discrimination policy (56.1 St. ¶ 97).  Cruz also acknowledges that the "New Management" implemented anti-discrimination and diversity training starting in August 2018 (56.1 St. ¶ 11).

Cruz's claims should be dismissed because it is well-established that references to demeanor and facial expression, without more, are insufficient to sustain a claim for employment discrimination.  *Edwards v. New York State Office of Mental Health*, 2017 WL 666227, at *5

---

[2] Shah also testified that he did not know Cruz's sexual orientation before the litigation, and recalled no discussions with Cruz about it (56.1 St. ¶ 104).  In addition, as Shah testified, the fact that Cruz allegedly displayed a rainbow on his computer screen would not necessarily indicate Cruz's own sexual orientation (56.1 St. ¶ 87), as opposed to expressing support for a political or social cause.

[3] Cruz also complained that Shah did not speak to him much, and spoke much more to O'Donnell.  Shah admitted that he spoke to O'Donnell more than he did to Cruz, and explained that he did so because O'Donnell, as Accounts Payable Manager, was his "second in command."  (56.1 St. ¶ 107). Shah also delegated to O'Donnell the responsibility for daily supervision of Cruz and Krasniqi (56.1 St. ¶ 108).

(E.D.N.Y. Feb. 20, 2017) ("The Court refuses to make the leap from a disagreeable facial expression to one that evinces discrimination against Born Again Christians"); *Fiorillo v. United Techs. Corp*., 2016 WL 1118789, at *21 (D.Conn. Mar. 21, 2016) (facial expressions and tone of voice insufficient to show that hostility was motivated by protected status); *Grant v. Continental Casualty Co*., 2015 WL 1499724, at *9 (S.D.N.Y. Mar. 30, 2015) (supervisor's habit of sighing when plaintiff spoke failed to establish discriminatory animus or pretext); *Peters v. Mount Sinai Hosp.*, 2010 WL 1372686, at *10 (S.D.N.Y. Mar. 30, 2010) (summary judgment granted; annoyed demeanor and facial expressions not evidence of discriminatory animus); *Gertskis v. New York City Dep't of Health & Mental Hygiene*, 2009 WL 812263, at *6 (S.D.N.Y. Mar. 26, 2009) (no claim of sexual harassment or hostile work environment based solely on facial expressions); *Wilson v. Family Dollar Stores of New York, Inc*., 2008 WL 4426957, at *8 (E.D.N.Y. Sept. 25, 2008) (summary judgment granted; angry facial expressions that make plaintiff uneasy do not violate Title VII or indicate unlawful discriminatory animus); *Chery v. City University of New York*, 2008 WL 858989, at *4 (E.D.N.Y. Mar. 31, 2008) (facial expression of "mockery and insult" insufficient to establish discriminatory intent); *Nieves v. Avalonbay Communities*, 2007 WL 2422281, at *10 (D.Conn. Aug. 23, 2007) (summary judgment granted; tone of voice and facial expression not indicative of racial animus).  Accordingly, Cruz's discrimination claim amounts to nothing more than "I am a member of a protected class; something bad happened to me at work; it must have happened because I am a member of that protected class", which is insufficient as a matter of law.  *Peters v. Mount Sinai Hosp*., 2010 WL 1372686, at *11 (S.D.N.Y. Mar. 30, 2010).

As noted above, analysis under the New York City Human Rights Law does not yield a different result; although the city law applies a standard to claims alleging a discriminatory hostile work environment (which has *not* been alleged here) different from that prescribed under federal

law, local law still requires the plaintiff to produce admissible evidence that he was treated less well because of a protected characteristic. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (under city law, plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive. It is not enough that a plaintiff has an overbearing or obnoxious boss. She must show that she has been treated less well at least in part "because of her gender"). Further, an alleged facial expression, without more, is no more probative of discriminatory animus under local law than it is under federal law. *See Kerman-Mastour v. Financial Industry Regulatory Authority, Inc.*, 814 F.Supp.2d 355, 368-369 (S.D.N.Y. 2011) (making comments about religious holidays in a "sarcastic tone of voice" no more than a petty slight or trivial inconvenience not actionable under city law, and not evidence of discriminatory animus). Accordingly, Cruz's claims of discrimination on the basis of sexual orientation should be dismissed upon summary judgment.

IV.   <u>Cruz Has Failed to Establish Pretext</u>

The Firm selected Cruz for layoff in June 2019 because it concluded that Cruz was not busy and lacked the skills to contribute meaningfully to the department, especially after Shah automated many of Cruz's prior tasks (56.1 St. ¶¶ 35, 111). Shah explicitly noted in Cruz's performance evaluation that Cruz's limited skill set, including his lack of familiarity with Microsoft Excel, hampered Shah's ability to assign him work (56.1 St. ¶ 45). Rather than displaying initiative by improving his skill set, Cruz was difficult to find because of long cigarette breaks, and frequently dozed off at his desk (56.1 St. ¶¶ 61-64). By contrast, Krasniqi received the same training as Cruz and quickly became proficient in Excel (56.1 St. ¶ 58). As a result, although Horovitz had initially contemplated that both Cruz and Krasniqi be replaced, the Firm decided not to separate Krasniqi from employment as a result of her demonstrated efforts (56.1 St.

¶¶ 67-71).   By contrast, roughly one month before Cruz's separation, O'Donnell prepared a memorandum outlining many areas of disappointment in Cruz's performance (56.1 St. ¶ 66), and after his departure, she discovered more (56.1 St. ¶ 75).

Cruz does not offer any evidence challenging this explanation.  He admits, even today, that he does not know how to use Microsoft Excel (56.1 St. ¶ 9), and he admits that he made no substantive effort to learn how to use the software, even though instruction was readily available through O'Donnell during work hours or over the Internet at no cost (56.1 St. ¶¶ 31, 33, 34, 48). Cruz also admits that after Shah directed him in his 2018 performance evaluation to approach Shah when he had idle time or capacity for additional work, he did not do so, and could offer no explanation for this (56.1 St. ¶ 51).  Cruz also acknowledges that his workload declined from 2018 to 2019 and that he rarely, if ever, worked overtime (56.1 St. ¶¶ 43, 65, 115).

At most, Cruz appears to argue that the Firm should have hired an external trainer to coach him on Excel, rather than have O'Donnell instruct him directly, and that he should have been explicitly assigned additional work rather than told to seek out his boss when he was free.  Cruz's subjective opinions about how the department should have been run, however, fail to cast doubt on the Firm's assessment that Cruz, himself, was not meaningfully contributing sufficiently to the operations of the Finance Department to warrant his continuing employment.  *Downey v. Adloox, Inc.*, 2018 WL 5266875 (S.D.N.Y. Oct. 23, 2018) (although plaintiff disagreed with employer's assessment of his performance, he could not dispute that management sincerely believed his performance was inadequate, as evidence by ample contemporaneous documentation expressing concern about his productivity).

Just as significantly, Cruz has not presented any evidence to suggest that the Firm's real reason for laying him off was unlawful discrimination, rather than his lack of qualifications or

utility to the department.   "Plaintiff has not presented any statements reflective of bias against those in a protected class or pointed to conduct that would reasonably lead a jury to conclude that Defendants more likely than not harbored a discriminatory motive when firing Plaintiff."   *Gilani v. Teneo, Inc.*, 2021 WL 3501330, at *16 (S.D.N.Y. Aug. 4, 2021).

Likewise, the fact that the individual hired after Cruz was younger than he is not indicative of pretext.   *See Fagan v. N.Y. State Elec. & Gas Corp.*, 186 F.3d 127, 134 (2d Cir. 1999) ("The replacement of an older worker with a younger worker or workers does not itself prove unlawful discrimination"); *Waldorf v. Liberty Maint., Inc.*, 2007 WL 942103, at *8 (S.D.N.Y. Mar. 29, 2007); *McFadden v. Mem'l Sloan–Kettering Cancer Ctr.*, 2006 WL 2930200, at *6 (S.D.N.Y. Oct. 11, 2006) (granting summary judgment where, although plaintiff established prima facie case in part by demonstrating that she was replaced by a significantly younger employee, plaintiff had "failed to show either that [defendant's proffered] reasons [we]re illegitimate or that they were pretexts"); *O'Sullivan v. N.Y. Times*, 37 F.Supp.2d 307, 319 (S.D.N.Y. 1999) ("[A]llegations of replacement by younger workers do not, without more, prove discrimination."); *see also Futrell v. J.I. Case*, 38 F.3d 342, 348 (7th Cir. 1994) ("Typically, younger workers will replace older ones; this is an unremarkable phenomenon that does not, in and of itself, prove discrimination."). Further, as Shah testified, the position Villatoro was hired into had expanded responsibilities that Cruz was not qualified to perform.   *Testa v. CareFusion*, 305 F. Supp. 3d 423, 436 (E.D.N.Y. 2018) (despite allegedly "significant" age discrepancy between discharged employee and his replacement, no reasonable jury could conclude that plaintiff was fired because of his age given significant performance and skill deficiencies).   The same conclusion is warranted under the NYCHRL.   *Hosking v. Mem'l Sloan-Kettering Cancer Ctr.*, 186 A.D.3d 58, 67, 126 N.Y.S.3d 98, 105 (2020) ("The simple fact that plaintiff was replaced by someone younger than her, standing

alone, does not suffice to establish a prima facie case and to rebut defendant's proffered legitimate reason for her termination, as pretextual").

## Conclusion

For the reasons set forth in this memorandum of law, Defendant respectfully requests that the Court (a) grant their motion to for summary judgment in its entirety, (b) award Defendant its costs and disbursements and (c) grant Defendant such other relief as the Court deems just and proper.

Dated: New York, New York
          March 4, 2022

                                              COLLAZO & KEIL LLP

                                              By:_____/s/_____

                                              John P. Keil
                                              747 Third Avenue, 25th Floor
                                              New York, New York 10017
                                              (212) 758-7600
                                              Attorneys for Defendant