UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

CHARLIE CRUZ,

                      Plaintiff,

        -against-

BERNSTEIN LITOWITZ BERGER &
GROSSMAN LLP

                    Defendant.

------------------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
DOC #: _____
DATE FILED: _ 3/29/2023 _

20-CV-8596 (VF)

**OPINION & ORDER**

**VALERIE FIGUEREDO, United States Magistrate Judge.**

      Defendant Bernstein Litowitz Berger & Grossman LLP moves for summary judgment

pursuant to Federal Rule of Civil Procedure 56(a) against Plaintiff Charlie Cruz. In his

Complaint, Cruz alleges that Defendant discriminated against him by terminating his

employment on the basis of his age and sexual orientation, in violation of the Age Discrimination

in Employment Act, 29 U.S.C. § 626 et seq. ("ADEA"), Title VII of the Civil Rights Act of

1964, 42 U.S.C. §2000e et seq. ("Title VII"), and the New York City Human Rights Law, New

York City Administrative Code, § 8-101 et seq. ("NYCHRL").[1] For the reasons that follow,

Defendant's motion is **GRANTED**.

---

[1] Linda Graham, who was initially Cruz's co-plaintiff in this action, agreed to withdraw
her claims pursuant to a settlement reached with Defendant. See ECF Nos. 19, 22 at 2. On May
24, 2022, the Court entered a stipulation and order dismissing Graham's claims against
Defendant with prejudice. See ECF Nos. 30-31.

## BACKGROUND

### I.   Undisputed Factual Background[2]

Bernstein Litowitz Berger & Grossmann LLP is a law firm with its primary office in New York. R. 56.1 Statement ¶ 111. In 1994, Charlie Cruz began working for Defendant as a mailroom clerk. Id. ¶¶ 1-2. In 2001, Cruz started working in Defendant's Finance Department. Id. ¶ 4. Prior to his termination, Cruz was as an Accounting Clerk in the Finance Department. Id. ¶ 3. Cruz, who has a high-school diploma, does not have any specialized training in mathematics or finance. Id. ¶¶ 6, 10. Cruz's supervisor in the Finance Department from 2001 to 2018 was Pravin Raval, Defendant's Controller. Id. ¶ 5. Raval supervised three employees in the Finance Department: Cruz, Lumturie Krasniqi, and Eleanor Derrick—all of whom were Accounting Clerks and performed primarily clerical functions.[3] See id. ¶ 20.

In 2018, Raval announced his retirement, and Defendant hired Robert Shah as his replacement. Id. ¶¶ 12-13. Starting in May 2018, Shah, who had prior experience overseeing finance departments in a number of law firms, assumed and expanded upon Raval's responsibilities in the newly created role of Director of Finance. Id. ¶ 13. In or about August 2018, Defendant hired an accountant named Natalia O'Donnell for the newly created role of Accounts Payable Manager, to issue checks, make journal entries, and oversee the department in Shah's absence. Id. ¶ 24. O'Donnell was "second in command" to Shah in the Finance

---

[2] The facts recounted herein reflect the undisputed, material facts contained in Plaintiff's Response to Defendants Rule 56.1 Statement and Plaintiff's Rule 56.1 Statement ("R. 56.1 Statement"). See ECF No. 35 (R. 56.1 Statement at pp. 1-20). Plaintiff has also provided a "Statement of Additional Materials Facts as to which it is Contended that There Exists a Genuine Issue to be Tried." See R. 56.1 Statement at pp. 20-34. Citations to that statement are denoted as "Statement of Additional Material Facts" followed by the relevant paragraph number.

[3] Derrick was terminated in August 2018. See R. 56.1 Statement ¶ 23.

Department, and she worked closely with both Cruz and Krasniqi.[4] Id. ¶¶ 24, 109. Krasniqi's job responsibilities at this time included processing Defendant's credit-card account, uploading invoices, and reconciling accounts. Id. ¶ 29.

Cruz distributed payroll, worked with vendors on unpaid invoices, dispersed petty cash, performed data entry on financial transactions, and responded to requests for data on expenses in connection with attorney-fee applications. Id. ¶ 28. Cruz's principal job responsibility was data entry. Id. ¶ 50. Cruz slept at his desk on multiple occasions during work hours, took cigarette breaks during work hours, and at times was "hard to find at his desk." Id. ¶¶ 61-64, 74. On multiple occasions, Shah or O'Donnell looked for Cruz to discuss a work matter and could not find him. Id. ¶ 64. On one occassion, Cruz found Shah and O'Donnell laughing and pointing at his computer screensaver, which featured an image of the Puerto Rican flag with a rainbow pattern. Id. ¶¶ 81, 88. Cruz asked what was funny; Shah and O'Donnell stopped laughing and walked away. Id. ¶ 82. Both Shah and O'Donnell deny that they laughed at Cruz's screensaver, id. ¶¶ 83-84, and neither Shah nor O'Donnell recall the flag being rainbow-colored. Id. ¶¶ 85-86.

In 2018, the firm's Director of Human Resources, Genie Principe, announced her retirement. Id. ¶ 14. Before her departure, Principe hired Catherine Blessing, who was charged with updating and modernizing Defendant's "Human Resources processes." Id. ¶¶ 14-15. Upon Principe's retirement, Blessing was promoted to Director of Human Resources. Id. ¶ 16. Also in

---

[4] Cruz disputes that O'Donnell was his direct supervisor; Cruz states that he had been informed that Shah was his "only" supervisor. See Declaration of Charlie Cruz ("Cruz Decl.") ¶¶ 26, 27, ECF No. 34. Cruz, however, does not dispute Shah's testimony characterizing O'Donnell as Shah's "second in command" in the department. See R. 56.1 Statement ¶ 109. Defendant contends that both Shah and O'Donnell understood O'Donnell to be Cruz's direct supervisor. See R. 56.1 Statement ¶¶ 25, 110; see also Shah Dep. Tr. at 32, 71, ECF No. 25-2. For purposes of analyzing Cruz's claims, the Court assumes that Shah was Cruz's supervisor and O'Donnell was "second in command" to Shah in the Finance Department.

2018, the firm recruited Reid Horovitz to serve as its Chief Operating Officer. Id. ¶ 112. During this time, Defendant reviewed its operations with the goal of elevating the professionalism of the internal support services offered to the firm's attorneys. Id. ¶ 17. Pursuant to this operational review, Defendant closed its San Diego office at the end of 2018 and restructured its Litigation Support Department to better serve the firm's attorneys. Id. ¶¶ 18-19.

As the Finance Department head, Shah advised Cruz about upcoming changes in the Department and invited Cruz to talk to him about those changes. Id. ¶ 114. For instance, in 2019, Shah discontinued the manual distribution of paychecks to Defendant's employees (one of Cruz's responsibilities). Id. ¶ 35. One of Cruz's more time-consuming assignments required him to manually transfer certain expense information (such as the dates and amounts of checks) between software programs that were not perfectly compatible; Shah arranged for this task to be automated in 2019. Id. ¶ 113. As a result, from 2018 to 2019, Cruz experienced a reduction of between 75% and 80% in his workload. Id. ¶¶ 43, 65, 113.

Cruz had been directed by Raval to learn to use Microsoft Excel in order to support his work in the Finance Department. Id. ¶ 8. In Cruz's 2018 performance evaluation, Shah also directed Cruz to learn Excel; Shah regarded the ability to use Excel as "required for Cruz's position." Id. ¶¶ 31, 45-46. In the evaluation, Shah noted limitations in Cruz's skills that prevented Shah from assigning Cruz additional work. Id. ¶¶ 45, 47. Shah also instructed Cruz to ask for additional responsibilities when he had idle time in his schedule.[5] Id. ¶ 45.

When Shah directed Cruz to prepare an analysis in Excel, Cruz responded by doing the work manually, with pencil and paper. Id. ¶ 41. Cruz understood that Defendant wanted him to

---

[5] After receiving his 2018 performance review, Cruz did not approach Shah for additional work when he had idle time, choosing instead to wait for the work to be given to him. R. 56.1 Statement ¶ 51.

keep track of petty cash using Excel. Id. ¶ 55. Cruz did not know how to use Excel and "did not believe his job required him to use" Excel, because his job mainly entailed "transferring information." Id. ¶¶ 9, 49. O'Donnell tried to show Cruz how to use Excel, but O'Donnell ultimately concluded that Cruz refused to accept her help. Id. ¶¶ 31-32, 56. Krasniqi, on the other hand, became proficient in Excel with help from O'Donnell. Id. ¶ 58.

In 2019, after becoming familiar with Cruz's work, Shah concluded that performing financial tasks only with pencil and paper, as Cruz had been doing, was "highly inefficient and unproductive;" Shah believed that Cruz had no intention of increasing his productivity or acquiring additional skills, and lacked the skills needed to be employed in the finance department of a law firm. Id. ¶¶ 21, 115. O'Donnell, too, determined that Cruz lacked the skills necessary to work in Defendant's Finance Department. Id. ¶ 26.

In late May 2019, Blessing and Horovitz performed an assessment of Defendant's support staff in New York, including secretaries, receptionists, paralegals, office-services employees, accounting and IT personnel, and other non-professional staff, and concluded that out of roughly 50 support staff employees, six were either underutilized or underperforming and should be considered for replacement or elimination of their positions. Id. ¶ 67. Blessing and Horovitz met with employees from all of Defendant's departments, ultimately concluding that some departments were overstaffed and some employees were underutilized. Id. ¶¶ 68-69. During that process, Shah told Horovitz that many of Cruz's responsibilities had gone away, the Department had tried to improve Cruz's skills set but Cruz was resistant to change and unwilling to improve his skills, and Cruz did not seem interested in gaining additional responsibilities. Id. ¶¶ 70-71. Shah also spoke to Horovitz about Krasniqi, explaining that Krasniqi had been receptive to change, was eager to learn, and had acquired new skills. Id. ¶ 72.

In June 2019, Defendant terminated six employees in the New York office: one paralegal, one accounting clerk (Cruz), one "office services" employee, two secretaries, and the only "word processing specialist."[6] Id. ¶ 116. Krasniqi remained employed with Defendant, as did other support staff employees over the age of 50.[7] Id. ¶¶ 103, 105. After his termination, Cruz's responsibilities were divided between Krasniqi and O'Donnell. Id. ¶ 78. Following his departure, O'Donnell looked through Cruz's desk and found invoices that were up to eight years old and had not been filed, and found invoices that had been paid but had not been entered in the accounting system or allocated to a case. Id. ¶ 76.

After Cruz's departure, Defendant hired Laura Villatoro—a college graduate with an Associate Degree in Accounting and a Bachelor's Degree in Business Administration. Id. ¶¶ 77, 79. Villatoro had five years of work experience handling the finances of a variety of businesses. Id. ¶ 79. Because of Villatoro's "more advanced training," Shah assigned her tasks that Cruz had been unqualified to perform. Id. ¶ 80. Villatoro's responsibilities included testing new payment software, entering and coding invoices, issuing IRS Form 1099's, performing account analysis, and other tasks that could only be performed by a person with an accounting degree. Id.

Neither Shah, nor anyone else at the firm, ever used an offensive word or name towards Cruz. Id. ¶ 91. No one at the firm showed Cruz any pictures, images, or cartoons that he found

---

[6] Although there are no undisputed facts in the parties' Rule 56.1 Statement as to the precise ages of the five employees terminated alongside Cruz in June 2019, it appears from the record that the five employees were all over the age of 40. See Decl. of Amy Robinson ("Robinson Decl.") Ex. 4, ECF No. 33 (spreadsheet of terminated employees and their ages, created and produced by Defendant).

[7] There are no undisputed facts as to Krasniqi's age, and it does not appear elsewhere in the record, but Cruz "think[s]" Krasniqi is older than him. See Cruz Dep. Tr. at 86, ECF No. 25-1; R. 56.1 Statement ¶ 101. Cruz states that he was 53 years old when he was terminated. See Statement of Additional Material Facts ¶ 2.

offensive. Id. ¶ 94. No one at the firm told any jokes that Cruz found offensive, or expressed any political views that made Cruz feel uncomfortable. Id. ¶¶ 95-96. The only time Cruz recalled Shah referencing age was on one occasion when Shah referred to his own gray hair and said he (Shah) was getting old. Id. ¶ 100. Cruz's basis for believing that Shah harbored discriminatory animus against him is that Shah gave him "nasty looks," "wouldn't smile" at him, and would "look at [him] with disgust." Id. ¶ 81. Aside from the allegations with respect to Shah, no one at the firm made any comments that made Cruz feel unwelcome or singled out because of his sexual orientation or age. Id. ¶¶ 87, 97-98.

## II.   **Procedural Background**

Cruz filed his complaint on October 15, 2020, see ECF No. 1, and Defendant filed its answer on December 15, 2020, see ECF No. 8.[8] On July 13, 2021, upon consent of the parties, the Honorable Jesse M. Furman entered an order referring the case to the undersigned to conduct all proceedings and order entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. See ECF No. 16. On March 4, 2022, Defendant submitted its Motion for Summary Judgment and supporting papers, including its Rule 56.1 Statement. ECF Nos. 21-25. Cruz filed his opposition on June 13, 2022, along with his responses to Defendant's Rule 56.1 Statement and a counter-statement of additional material facts. See ECF Nos. 32-35. The motion was fully briefed on July 8, 2022. See ECF No 37.

---

[8] In his complaint, Cruz alleges that he had previously "filed . . . Charges with the Equal Employment Opportunity Commissioner ('EEOC') on December 12, 2016," and that the EEOC issued a "Right to Sue" letter to Plaintiff, which was received on July 20, 2020 (prior to the commencement of this suit). See ECF No. 1 ¶ 10, Ex. A.

## LEGAL STANDARDS

### I.  Summary Judgment

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage . . . is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them." Gallo 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter or matters that "it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.

A fact is material when it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of fact is genuine "if the evidence is such that a jury could return a verdict for the nonmoving party." Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (quoting Anderson, 477 U.S. at 248.). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (quoting Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003)) (internal quotation marks omitted); Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008) (noting the Court must view all facts "in the light most favorable" to the non-moving party). However, a court is not required to draw any inference that is "blatantly contradicted by the record, so that no reasonable jury could believe it." Scott v. Harris, 550 US 372, 380 (2007).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008) (citing Celotex, 477 U.S. at 322-23). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citation, alteration, and internal quotation marks omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). For a genuine dispute regarding a material fact to warrant a jury trial, there must be sufficient evidence supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249 (citation and internal quotation marks omitted). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo, 22 F.3d at 1224; see also Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) ("[S]ummary judgment may be appropriate even in the fact-intensive context of discrimination cases.")

## II.   Age Discrimination Claims Under the ADEA

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1); see also 29 U.S.C. § 631(a) (ADEA protects individuals who are at least 40 years old). However, it is not unlawful to discharge an employee "where the differentiation is based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). In the Second Circuit, courts analyze

age-discrimination claims under the ADEA using the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010).

Under that framework, an ADEA plaintiff bears the initial burden of establishing a prima facie case of employment discrimination. Id. at 107. This means showing that (1) he was within the protected age group; (2) he was qualified for the position; (3) he experienced an adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination. Id. (citation omitted). "The burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion at the prima facie stage is de minimis." Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994) (citation, alteration and internal quotation marks omitted). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the [adverse act]." Mattera v. JPMorgan Chase Corp., 740 F. Supp. 2d 561, 571 (S.D.N.Y. 2010) (quoting Leibowitz v. Cornell Univ., 584 F.3d 487 (2d Cir. 2009)) (alteration in original). The defendant's burden here is "one of production, not persuasion." Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 142 (2000).

If the defendant satisfies this requirement, "the burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Leibowitz, 584 F.3d at 499 (citations and internal quotation marks omitted); Wolf v. Time Warner, Inc., 548 F. App'x 693, 694 (2d Cir. 2013) (in third step of burden-shifting framework, "plaintiff must prove that the employer's proffered reason was a pretext for discrimination") (quoting McPherson v. N.Y.C. Dep't of Educ., 457 F.3d 211, 215 (2d Cir. 2006)). In other words, the plaintiff "'must prove, by a

preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action' and not just a contributing or motivating factor." Gorzynski, 596 F.3d at 106 (quoting Gross v. FBL Fin. Servs. Inc., 557 U.S. 167, 180 (2009)).

## III.   Sexual Orientation Claims Under Title VII

Title VII renders it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has held that "homosexuality and transgender status are inextricably bound up with sex," and that "to discriminate on these grounds requires an employer to intentionally treat individual employees differently because of their sex." Bostock v. Clayton County, Georgia, 140 S. Ct. 1731, 1741-42 (2020) affirming Zarda v. Altitude Express, Inc., 883 F.3d 100, 112 (2d Cir. 2018) (holding that "sexual orientation discrimination is motivated, at least in part, by sex and is thus a subset of sex discrimination . . . which is an impermissible basis for adverse employment actions"). Accordingly, Title VII prohibits an employer from discriminating against an employee on the basis of sexual orientation. Id.; see also Cargian v. Breitling USA, Inc., No. 15-CV-1084 (GBD), 2021 WL 4780327, at *7 (S.D.N.Y. Sept. 13, 2021).

Claims under Title VII are also analyzed under the three-part McDonnell Douglas burden-shifting framework. Walsh v. New York City Hous. Auth., 828 F.3d 70, 74-75 (2d Cir. 2016). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Id. at 75. Like the showing required for claims under the ADEA, to establish a prima facie claim of discrimination under Title VII, the plaintiff "must show: (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an

adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012) (quoting Holcomb, 521 F.3d at 138). The burden of making this showing is de minimis. See Dais v. Lane Bryant, Inc., 168 F. Supp. 2d 62, 71 (S.D.N.Y. 2001); Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006); see also Abdu-Brisson, 239 F.3d at 467 (explaining that the requirement of establishing a prima face case is "neither onerous nor intended to be rigid, mechanized or ritualistic") (internal citations and quotation marks omitted).

"In determining whether the plaintiff has met the de minimis initial burden of showing circumstances giving rise to an inference of discrimination"—the fourth prong of the prima facie case—the court considers whether the "proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 204 (2d Cir. 1995) (citation and internal quotation marks omitted). A plaintiff may establish an inference of discriminatory intent by showing that he was treated differently than others similarly situated. See Abdu-Brisson, 239 F.3d at 467-68. In addition to showing disparate treatment, an inference of discriminatory intent may also be drawn from other circumstances, such as "invidious comments about others in the employee's protected group," "more favorable treatment of employees not in the protected group," "the sequence of events leading to the plaintiff's discharge," or the "employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position." Id. at 468 (quoting Chambers, 43 F.3d at 37).

If a plaintiff establishes a prima facie case, a presumption of discrimination is created and "the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action or termination." Farias v. Instructional Sys., Inc., 259

F.3d 91, 98 (2d Cir. 2001); McDonnell Douglas Corp., 411 U.S. at 802. However, the defendant

"need not persuade the court that it was actually motivated by the proffered reason." Delaney v.

Bank of Am. Corp., 766 F.3d 163, 168 (2d Cir. 2014) (citation and internal quotation marks

omitted). If the defendant succeeds at step two of the McDonnell Douglas framework by

articulating a legitimate, nondiscriminatory reason for the plaintiff's termination, the

presumption of discrimination is rebutted. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502,

507, 509-11 (1993).

At this point, the burden then "shifts back to the plaintiff to provide admissible evidence

showing that the defendant's proffered reason was a pretext for discrimination." Grant v. Cont'l

Cas. Co., No. 13-CV-5675 (AT), 2015 WL 1499724, at *6 (S.D.N.Y. Mar. 30, 2015) (citation

omitted); see also Holcomb 521 F.3d at 138,142 (if the prima facie case is rebutted, a plaintiff

"may still prevail by showing . . . that the employer's determination was in fact the result" of

discrimination). Otherwise stated, to withstand summary judgment, "the plaintiff must produce .

. . sufficient evidence to support a rational finding that the legitimate nondiscriminatory reasons

proffered by the defendant were false, and that more likely than not discrimination was the real

reason for the employment action." Grant, 2015 WL 1499724, at *6 (S.D.N.Y. Mar. 30, 2015)

(citation and internal quotation marks omitted); see also Holt v. KMI-Continental, Inc., 95 F.3d

123, 129 (2d Cir. 1996). In some cases, assessment of a plaintiff's prima facie case and his

evidence of pretext "tend to collapse as a practical matter under the McDonnell Douglas

framework." See Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 n.1 (2d Cir. 2002).

## IV.   Discrimination Claims Under the NYCHRL

Section 8-107(1)(a) of the NYCHRL makes it "an unlawful discriminatory practice . . .

[f]or an employer or an employee or agent thereof, because of the actual perceived age . . . [or]

sexual orientation . . . of any person . . . to discharge from employment such person." N.Y.C. Admin. Code § 8-107(1)(a). The NYCHRL prohibits a broader range of discriminatory conduct than its state and federal analogues. See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) ("[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.") (internal citations and quotation marks omitted). A plaintiff's NYCHRL claims must "be analyzed both under the McDonnell Douglas framework and the somewhat different 'mixed-motive' framework." Melman v. Montefiore Med. Ctr., 98 A.D.3d 107, 113 (1st Dep't 2012).

The core inquiry under the NYCHRL is whether the plaintiff can "show that her employer treated her less well, at least in part for a discriminatory reason." Mihalik, 715 F.3d at 110 n.8. "The employer may present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that discrimination played no role in its actions." Id. (citation, alteration, and internal quotation marks omitted); see also Melman, 98 A.D.3d 107 at 128 (explaining that an employer is entitled to summary judgment on an NYCHRL claim if the "plaintiff has failed to come forward with any evidence—direct or circumstantial—from which it could rationally be inferred that [ ] discrimination was a motivating factor, even in in part, for [the employer's] treatment of [the plaintiff].").

## DISCUSSION

Plaintiff alleges that he was unlawfully terminated because of his age, in violation of the ADEA and NYCHRL, and because of his sexual orientation, in violation of Title VII and the NYCHRL. With respect to Plaintiff's age-discrimination claim under the ADEA and sexual-orientation claim under Title VII, although Plaintiff has established a prima facie case, he has

14

failed to raise a genuine issue of fact regarding Defendant's non-discriminatory reasons for Plaintiff's termination. Simply put, Plaintiff has failed to show that Defendant's proffered reasons for terminating Plaintiff's employment were false. With respect to Plaintiff's NYCHRL claims, Plaintiff has also failed to demonstrate that his termination was motivated by discrimination. Stated otherwise, Plaintiff has failed to proffer any evidence from which it could rationally be inferred that discrimination was a motivating factor in Defendant's decision to terminate Plaintiff. Accordingly, Defendant's motion for summary judgment is granted with respect to Plaintiff's ADEA, Title VII, and NYCHRL claims.

## I.   <u>Plaintiff age-discrimination claim under the ADEA</u>

To establish a prima facie case of age discrimination under the ADEA, a plaintiff must show that (1) he was within the protected age group; (2) he was qualified for the position; (3) he experienced an adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination. <u>Gorzynski</u>, 596 F.3d at 107 (citation omitted). Cruz has established a prima facie case.

First, Cruz, who was 53 years old at the time of his termination, is within the protected age group. <u>See</u> 29 U.S.C. § 631(a); Statement of Additional Material Facts ¶ 2; Cruz Decl. ¶ 5. Second, termination is plainly an adverse employment action. <u>See</u> <u>Lambert v. Trump Int'l Hotel & Tower</u>, 304 F. Supp. 3d 405, 417 (S.D.N.Y. 2018). Third, Cruz was qualified to work as an Accounting Clerk in the firm's Finance Department. To establish that he was qualified for the position, Cruz "need not demonstrate that his performance was flawless." <u>See</u> <u>De la Cruz v. New York City Human Res. Admin. Dep't of Soc. Servs.</u>, 82 F.3d 16, 20. Instead, he need only show that he "possesse[d] the basic skills necessary for the performance of the job." <u>Thelwell v. City of New York</u>, No. 13-CV-1260 (JGK), 2015 WL 4545881, at *13-14 (S.D.N.Y. July 28, 2015)

(quoting De la Cruz, 82 F.3d at 20) (alteration omitted). Cruz's performance reviews from 2002 through 2017 consistently rated his overall performance as "good" or "excellent." See ECF No. 33-1 (Cruz performance reviews). For instance, in Cruz's 2017 year-end evaluation, prepared by Raval, Cruz was given an "overall grade" of "excellent" (defined as "consistently exceed[ing] expectations"), and there were no negative comments as to his performance. Id. at 36. Cruz's "positive overall" performance evaluations throughout his tenure at the firm demonstrate that he was qualified for his position. See De la Cruz, 82 F.3d at 21 ("[A] performance evaluation that is positive overall is sufficient to withstand summary judgment at the prima facie stage of analysis.").

Moving to the fourth element of the prima facie case, Cruz has established that his termination occurred under circumstances giving rise to an inference of discrimination. Cruz asserts that most of the individuals hired to replace those who were terminated by Defendant in 2018 and 2019 were "significantly younger." See Cruz Decl. ¶ 28. Additionally, following Cruz's departure, Defendant hired Laura Villatoro as a new member of the Finance Department, who at the time of her hiring "was a college graduate" with "five years of work experience."[9] See R. 56.1 Statement ¶¶ 77, 79. And Cruz asserts that following his termination, his responsibilities were in part taken over by O'Donnell, see R. 56.1 Statement ¶ 78; Shah Dep. Tr. at 24, who according to Cruz "is in her 30's." See Pl.'s Br. at 8; see also O'Donnell Dep. Tr. at 59-60, ECF No. 25-3 (testifying as to her age). "Plaintiff's burden of proof at the prima facie stage is de minimus," and may be established simply by showing that the plaintiff "was replaced

---

[9] Although there is nothing in the record as to Villatoro's age at the time she began working for Defendant, Defendant seemingly concedes that Villatoro was younger. See Def.'s Br. at 17, ECF No. 22 (asserting "the fact that the individual hired after Cruz was younger than he is not indicative of pretext").

by someone outside his protected class." See Dais, 168 F. Supp. 2d at 71; see also Saenger v. Montefiore Med. Ctr., 706 F. Supp. 2d 494, 507 (S.D.N.Y. 2010) (noting the fourth element of a prima facie case "is typically satisfied if the plaintiff is replaced by an individual outside of his protected class") (citation omitted); Zimmermann v. Assocs. First Cap. Corp., 251 F.3d 376, 382-83 (2d Cir. 2001) (same). Given the de minimus burden faced by a plaintiff at the prima facie stage, see Abdu-Brisson, 239 F.3d at 467-68, the circumstances Plaintiff points to are sufficient to establish a prima facie case of age discrimination.

Shifting to stage two of the McDonnell Douglas framework, Defendant has undoubtedly satisfied its burden of proffering a legitimate, non-discriminatory explanation for Cruz's termination. Defendant asserts that it "selected Cruz for layoff in June 2019 because it concluded that Cruz was not busy and lacked the skills to contribute meaningfully to the department, especially after Shah automated many of Cruz's prior tasks." See Def.'s Br. at 15. Courts in this Circuit routinely find that evidence indicating unsatisfactory work performance by the plaintiff is sufficient to establish a legitimate, non-discriminatory reason for an adverse employment action. Grant, 2015 WL 1499724, at *7; see e.g., Yoselovsky v. Associated Press, 917 F. Supp. 2d 262, 275-76 (S.D.N.Y. 2013) (employee's "poor work product," lack of responsiveness, and inattentiveness to deadlines established a legitimate, non-discriminatory reason for termination); Auguste v. New York Presbyterian Med. Ctr., 593 F. Supp. 2d 659, 666 (S.D.N.Y. 2009) ("[P]oor work performance has often been recognized as a legitimate, non-discriminatory reason for termination[.]"); E.E.O.C. v. Town of Huntington, No. 05-CV-4559 (DRH) (WDW), 2008 WL 361136, at *7 (E.D.N.Y. Feb. 8, 2008) (noting that "poor job performance constitutes a legitimate, nondiscriminatory reason" for adverse action); Potenza v. City of N.Y. Dept. of Transp., No. 00-CV-707 (SHS), 2001 WL 1267172, at *6 (S.D.N.Y. Oct. 23, 2001) (plaintiff's

inadequate work performance, evidenced in part by his poor communication with supervisors, was sufficient to qualify as a legitimate, non-discriminatory reason); Ghiradelli v. McAvey Sales & Servs., Inc., 287 F.Supp.2d 379, 383-84, 391 (S.D.N.Y. 2003) (granting summary judgment where employer offered documents and testimony to support position that plaintiff had insufficient computer skills, and plaintiff offered only conclusory testimony to support assertion that employer's articulated reason was pretextual).

As is established by ample, uncontroverted evidence, Cruz's job performance had, at least for many months, fallen below the expectations of Shah and O'Donnell. It is undisputed that: Cruz failed to learn how to use Excel despite direction from Shah and Raval to do so (R. 56.1 Statement ¶¶ 8, 41, 45-47, 55); O'Donnell and Shah determined in 2018 that Cruz lacked the appropriate skills and motivation to perform effectively in the firm's Finance Department, and that his work "was highly inefficient and unproductive" (id. ¶¶ 21, 26, 115); Cruz was found sleeping at his desk on multiple occasions, and on other occasions could not be located at all (id. ¶¶ 61-64, 74); and Cruz experienced a significant reduction in his workload between 2018 and 2019, in part because his former responsibilities were automated, resulting in Cruz not having enough "substantive work to perform" (id. ¶¶ 21, 43, 65, 70, 113-14).[10] Defendants have thus articulated a legitimate, non-discriminatory reason for terminating Cruz's employment. See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (employer's

---

[10] Cruz's satisfactory reviews prior to 2018 do not undo the unsatisfactory performance evaluation he received in 2018. "[C]laims of prior good performance do not, as a matter of law or logic, mean that present poor performance reviews were unfounded." Mattera, 740 F. Supp. 2d at 574; see also Downey v. Adloox Inc., No. 16-CV-1689 (JMF), 2018 WL 5266875, at *6 (S.D.N.Y. Oct. 23, 2018) (plaintiff's disagreement with supervisors' evaluations does not by itself rebut evidence of inadequate performance), aff'd, 789 F. App'x 903 (2d Cir. 2019). And, the undisputed facts establish that Cruz's job performance in 2018 and later had declined.

18

"uncontroverted evidence" that plaintiff's work was "below standard" served as a legitimate, nondiscriminatory reason for plaintiff's termination); Bogdan v. N.Y. City Transit Auth., No. 02-CV-9587 (GEL), 2005 WL 1161812, at *8 (S.D.N.Y. May 17, 2005) (concern about employee's poor work performance was an acceptable legitimate, non-retaliatory reason for his termination).

The burden thus shifts back to Cruz to establish that Defendant's proffered legitimate, non-discriminatory reason was pretextual. See Leibowitz, 584 F.3d at 499; Wolf, 548 F. App'x at 694. Stated differently, Cruz has to show "that age was a 'causative or determinative factor, one that made a difference in deciding whether [he] should be employed." Geller v. Markham, 635 F.2d 1027, 1035 (2d Cir. 1980). To meet this burden, Cruz relies on the following evidence: (1) Defendant's purported "pattern" of terminating older employees; (2) the Director of HR's alleged acknowledgment that "age is a consideration" in evaluating whether to terminate employees; and (3) the "totality of the evidence," including a comment that Shah made about his own gray hair that Cruz believed was actually directed at him. See Pl.'s Br. at 15-19, ECF No. 32.

First, Cruz asserts that Defendant exhibited a "pattern of terminating older workers." See Pl.'s Br. at 7, 15-16. To support this assertion, Cruz points to "a list of members of the Professional Staff who were terminated from [the firm]'s New York office between September 2017 and November 2020." See Pl.'s Br. at 7; Statement of Additional Material Facts ¶ 124 (citing Robinson Decl. Ex. 4 and Blessing Dep. Tr. at 22, 26-27, 33-34, 58-59). According to Cruz, the chart shows that 85% (17 of 20) of the administrative employees at the firm's New York office who were terminated between 2017-2020 were over the age of 40. Id. Cruz argues that the chart "strongly points to a pattern of discrimination." See Pl.'s Br. at 15-16. Cruz's reliance on statistical evidence falls short of establishing pretext or "but for" causation.

It is true that "[w]here a plaintiff lacks evidence of employer conduct that directly expresses discrimination, the plaintiff may rely on statistical or other circumstantial evidence." Pollis v. New Sch. for Soc. Rsch., 132 F.3d 115, 123 (2d Cir. 1997). However, "[i]f the plaintiff seeks to prove the discrimination by statistical evidence, . . . the statistics must support reasonably the inference that the employer's adverse decision would not have occurred but for discrimination." Id. In that regard, courts routinely reject statistics that are incomplete or unreliable. See e.g., Holowecki v. Fed. Exp. Corp., 644 F. Supp. 2d 338, 361-62 (S.D.N.Y. 2009), aff'd, 382 F. App'x 42 (2d Cir. 2010) (rejecting plaintiff's reliance on "certain raw numbers and statistics" to show that a "disproportionately small number of FedEx couriers" reached retirement age because the statistical evidence was "fundamentally flawed"); Pasha v. William M. Mercer Inv. Consulting, Inc., No. 00-CV-8362 (RWS), 2004 WL 188077, at *6-7 (S.D.N.Y. Feb. 2, 2004), aff'd 135 F. App'x. 489, 490 (2d Cir. 2005) (explaining that statistical evidence "does not necessarily prove discrimination" and did not prove plaintiff's age-discrimination claim because the statistical analysis did not "provide information regarding the applicant pool" from which plaintiff was drawing the comparison); Lanahan v. Mutual Life Ins. Co., No. 98-CV-9174, 1999 WL 314167, at *2 (2d Cir. May 17, 1999) (plaintiff's statistical evidence, purporting to show that defendant systematically dismissed older workers, "was not probative of age discrimination because, its dubious admissibility aside, it was incomplete and did not eliminate possible non-discriminatory reasons for the attrition of older workers from [defendant]"); cf. Smith v. Xerox Corp., 196 F.3d 358, 365 (2d Cir. 1999) (noting that plaintiffs must present statistical evidence "of a kind and degree sufficient to show that the practice in question has caused the [discriminatory practice] because of their membership in a protected group") (citation and internal quotation marks omitted).

Moreover, "[a]lthough a generalized statistical analysis of selections in a [reduction in force] can provide circumstantial evidence of an inference of discrimination in support of a prima facie case, as a matter of law, it is not sufficient to establish that the Defendant's legitimate business rationale for eliminating Plaintiff's position is false, or that her age or gender was the real reason for her termination." Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP, 869 F. Supp. 2d 378, 395-96 (S.D.N.Y. 2012); see Robinson v. Metro–North Commuter R.R., No. 94-CV-7374 (JSR), 1998 WL 17742, at *9 (S.D.N.Y. Jan. 16, 1998) (holding that "while statistical evidence may sometimes enable a plaintiff to carry its modest burden of creating a prima facie case . . . the Court is aware of no case where generalized statistical evidence has been held sufficient to refute, for summary judgment purposes, a defendant's particularized evidentiary showing of a non-discriminatory explanation for a particular act") (internal citation omitted); Phillips v. Centrix Inc., 354 F. App'x 527, 528-29 (2d Cir. 2009) (explaining that "statistical evidence cited by plaintiff" cannot establish but-for causation with respect to the adverse employment action); Zenni v. Hard Rock Café Int'l, Inc., 903 F. Supp. 644, 654 (S.D.N.Y. 1995) (explaining that "statistical evidence of an employer's general hiring practices is insufficient to prove that a particular plaintiff was discriminated against").

As a threshold matter, Cruz has failed to provide any expert analysis to support his "statistical" evidence that purports to show a pattern by Defendant of terminating older administrative employees. Statistical evidence that is used to show that an employer "exhibit[s] a pattern of . . . terminating older workers," must be "supported by expert analysis," to meet "minimal standards" of admissibility. Saenger, 706 F. Supp. 2d at 515-516 (noting that expert analysis is necessary because without it "courts would have a difficult time ensuring that juries consider only 'statistically significant' data") (citing Ottaviani v. SUNY New Paltz, 875 F.2d

365, 371 (2d Cir. 1989)); see also LaMarch v. Tishman Speyer Props., L.P., No. 03-CV-5246

(CBA), 2006 WL 2265086, at *6 (E.D.N.Y. Aug. 8, 2006) ("[Plaintiff's] statistical evidence

regarding the terminations of employees older than 40 would be inadmissible because it is not

supported by any expert analysis"); Wright v. Stern, 450 F. Supp. 2d 335, 367-68 (S.D.N.Y.

2006) ("As in pattern or practice disparate treatment cases, statistics must be statistically

significant to give rise to an inference of causation.") (citation omitted); accord Kadas v. MCI

Systemhouse Corp., 255 F.3d 359, 363 (7th Cir. 2001) (noting that, when statistical evidence is

offered to show age discrimination, "[i]t is for the judge to say, *on the basis of the evidence of a*

*trained statistician*, whether . . . the study [is] worth the consideration of judge or jury")

(emphasis added). On this basis alone, Cruz cannot rely on his purported statistical evidence to

defeat summary judgment and establish "but for" causation. See Jaramillo, 536 F.3d at 145

(nonmoving party must come forward with *admissible* evidence sufficient to raise a genuine

issue of fact for trial to defeat summary judgment).

Regardless, even if Cruz's statistical evidence were admissible, the evidence cannot

establish a pattern of discrimination. Cruz argues that 85% of employees "who held

administrative roles" and were terminated between 2017 and 2020 were over the age of 40,

thereby suggesting a pattern of discrimination by Defendant. See Pl.'s Br. at 15-16. But Plaintiff

provides no evidence as to the ages of all the employees in administrative roles, or even of the

median or average age of Defendant's administrative employees.[11] Such information is necessary

---

[11] The record includes the ages of the pool of those employees considered for termination in June 2019 (see Decl. of Catherine Blessing ("Blessing Decl.") ¶ 4, ECF No. 36), when Cruz was terminated. Even as to that pool, however, there is no information about the ages of the overall pool of administrative employees at the firm. In any case, Cruz relies on the number of employees terminated between 2017 and 2020, and he does not provide any information about the ages of the pool of employees considered for layoffs during that time period.

to determine the significance of the 85% figure. Without such contextual information, no rational jury could draw any inference regarding Defendant's discriminatory intent, because it would be impossible to determine whether Defendant was more likely to terminate older employees.[12]

If, for instance, the majority, or even a large percentage, of administrative employees at the firm were under 40, then the fact that 85% of the administrative employees who were terminated were over 40 could be significant and might support an inference that older employees were disproportionally impacted by Defendant's termination decisions. In short, without providing a fuller picture of the age demographics of administrative employees at the firm, Cruz's reliance on the statistical evidence cannot reliably establish a pattern of discrimination. See Sacks v. Gandhi Eng'g, Inc., 999 F. Supp. 2d 629, 646 (S.D.N.Y. 2014) (finding plaintiff's showing that 19 of the 24 terminated employees (or 79%), were over the age of 40 did not establish pattern of discrimination, in part, because it was not "placed in context of the fact . . . that approximately two thirds of Defendant's employees at the time Plaintiff was employed were over age 40").

---

[12] See Saenger, 706 F.Supp.2d at 516 (statistical evidence could not be used to show unlawful discrimination where "data in the record only contain[ed] the ages of the doctors who Defendant fired" but "d[id] not provide the ages of the doctors that Defendant did *not* fire," and where "Plaintiff d[id] not even claim that the rate of termination for older employees at [Defendant] exceeds the rate of termination for younger employees," rendering the statistical evidence "incomplete and anecdotal") (emphasis in original); Pasha v. William M. Mercer Consulting, Inc., No. 00-CV-8362, 2004 WL 188077 (RWS), at *6-7 (S.D.N.Y. Feb. 2, 2004) (rejecting plaintiff's statistics regarding the ages of those hired by defendant because plaintiff failed to provide sufficient information regarding the ages of the applicant pool); Gambello v. Time Warner Commc'ns, Inc., 186 F. Supp. 2d 209, 224 (E.D.N.Y. 2002) ("Evidence that five out of thirty terminated employees were age-protected, without evidence of the total number of age-protected employees before and after the terminations and the percentage of discharged employees who were age-protected, is insufficient to establish age-discrimination."); Guider v. F.W. Woolworth Corp., No. 96-CV-3168 (LAP), 1998 WL 702275, at *11 (S.D.N.Y. Oct. 7, 1998) ("Plaintiff's statistical evidence only accounts for the ages of those individuals hired, while ignoring the ages of those individuals who applied for the position . . . Without accounting for these factors, the statistics do not support an inference of age discrimination.").

Second, Cruz also relies on testimony by Defendant's Director of Human Resources, Catherine Blessing, who Cruz claims testified during her deposition that "age is a consideration," in response to a question as to why there was an "Age" column in a spreadsheet of terminated workers. A review of Blessing's testimony, however, does not support Plaintiff's characterization of her testimony. Blessing explained that "age is a consideration" because terminated employees "get one of two severance agreements" depending on "if they're over or under 40 years old." See Blessing Dep. Tr. at 55-56, ECF No. 25-4. Blessing further testified that the firm makes initial termination decisions based on "business reasons," and that age is "not a reason why we let people go." Id. at 56. As Blessing explained, the firm conducts an "impact analysis" to "understand . . . the makeup of [the firm's] staff" and "to make sure that [the firm is] not unfairly terminating those who are over 40 versus under 40." Id. Viewed in context, Blessing's testimony demonstrates that Defendant took into consideration an employee's age to make sure that the firm was *not* unfairly or disproportionally terminating older employees. See Zito, 869 F. Supp. 2d at 396-97 (document used by employer during reduction in force process with "age-related notations" did not create an inference of discriminatory intent where employer "testified that age was not a consideration") (internal quotations marks omitted); cf. Meachum v. Knolls Atomic Power Lab., 381 F.3d 56, 76-77 (2d Cir. 2004) (employer's failure to conduct a valid impact analysis may suggest a finding of discrimination).

Third, between the time Shah joined the firm in 2018 and Plaintiff's termination in 2019, Cruz points to a single comment by Shah in support of his age-discrimination claim. Specifically, Cruz testified that Shah said, "I am getting gray hair" and "I am getting old," and "look[ed] at [Cruz] like it was funny." See R. 56.1 Statement ¶¶ 93, 100; Cruz Dep. Tr. at 66-67; see also Shah Dep. Tr. at 35 (Shah recalling he "may have said" that he is "working so hard and [is] so

stressed . . . that [his own] hair is getting grayer"). Cruz, however, admits that Shah made the comments about "getting old" and "getting gray hair" about *himself*, not Cruz. See R. 56.1 Statement ¶¶ 93, 100; see also Cruz Dep. Tr. at 66-67; Shah Dep. Tr. at 35. While Cruz may have subjectively perceived those comments to be targeted at him (see Pl.'s Br. at 18), and even if they were, Shah's isolated remarks could not sensibly be characterized as "invidious." See Williams v. Victoria's Secret, No. 15-CV-4715 (PGG) (JLC), 2017 WL 1162908, at *6 (S.D.N.Y. Mar. 28, 2017) (noting that "invidious comments" can support inference of discrimination). To the contrary, Shah's one-time comments can fairly be characterized as "stray remarks," which do not raise an inference of discriminatory motivation. Id. at *8 (allegations that supervisor "repeatedly" stated that plaintiff was "almost 40" and "getting old" deemed non-actionable stray remarks); see also Phillips, 354 F. App'x at 529 (finding that "the two remarks by defendant's employees . . .—neither of which were directed at [plaintiff]—reflect little, if any, age-based discriminatory animus"). And, according to Cruz, aside from those comments by Shah, no one at the firm, including Shah, acted in any way that made him feel unwelcome because of his age, or singled him out because of his age. See R. 56.1 Statement ¶¶ 87, 98; see also Shah Dep. Tr. at 35 (Shah testifying that he "never" said anything about the appearances of others, including any comment suggesting that another person "looked old").

Moreover, Cruz has not demonstrated any causal nexus between his termination and Shah's remarks. "[V]erbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff." Moore v. Verizon, No. 13-CV-6467 (RJS), 2016 WL 825001, at *8 (S.D.N.Y. Feb. 5, 2016) (citation and internal quotation marks omitted); see also Woodard v. TWC Media Sols., Inc., No. 09-CV-3000 (BSJ) (AJP), 2011 WL 70386, at *7

(S.D.N.Y. Jan. 4, 2011). In determining whether a comment is causally connected to an adverse employment decision, "courts consider who made the remark, when the remark was made in relation to the termination, the content of the remark, and the context in which the remark was made." Id. (citation omitted); Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149 (2d Cir. 2010). "Remarks are especially likely to be considered 'stray' when made by a decision maker unrelated to the decision-making process or temporally remote from the date of decision." Woodard, 2011 WL 70386, at *7 (citation omitted). Cruz has not provided any evidence as to when Shah made the statements. Nor is there any evidence concerning the context under which Shah made those comments. There thus is no evidence from which to conclude that the remarks by Shah were made in temporal proximity to Plaintiff's termination. See Moore, 2016 WL 825001, at *8-9 (supervisor's comments regarding plaintiff's age, such as "why don't you retire," and insults about hearing loss, were "non-actionable stray remarks," because the remarks were "not alleged to have arisen in a context at all related to the decision to suspend and later terminate" plaintiff); Delaney, 766 F.3d at 170 ("Comments about another employee's age, removed from any context suggesting that they influenced decisions regarding [plaintiff]'s own employment, do not suffice to create a genuine issue of fact as to whether age was the but-for cause of [plaintiff]'s termination."). Because Cruz points to stray remarks by Shah and has not shown any nexus, temporal or otherwise, between Shah's comments and Cruz's termination, the remarks cannot support an inference that Cruz's age was the "but for" cause of his termination and that Defendant's proffered business reasons were pretextual.

Finally, the Second Circuit "has long held that ADEA claims arising from the results of a firm's [work]force reduction will generally not lie where the record 'demonstrate[s] that the reorganization was a business decision made on a rational basis.'" Deebs v. Alstom Transp., Inc.,

346 F. App'x 654, 657 (2d Cir. 2009) (citing Parcinski v. Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982)). Cruz does not dispute that Defendant had been actively undertaking an internal review of its business operations, which included a plan for reorganization and a reduction in its workforce. Starting in 2018, Defendant conducted an operational review which led to the firm closing its office in San Diego and "restructure[ing] its Litigation Support Department." R. 56.1 Statement ¶¶ 17-19. As part of that operational review, Defendant assessed its support staff in New York to determine which department's had underutilized employees or were overstaffed. Id. ¶¶ 67-69. Further, Cruz does not dispute that between 2018 and 2019, he experienced a significant reduction in his workload due to some of his job responsibilities being automated. Id. ¶¶ 43, 65, 113. The record thus plainly demonstrates that prior to Cruz's termination, Defendant had been contemplating a business-driven restructuring of its administrative staff, and that the layoffs in 2019 were driven by Defendant's rational business desire to operate more efficiently.

In sum, each piece of evidence of pretext offered by Cruz, whether considered individually or collectively, fails to sufficiently raise a material issue of fact "that age was the 'but for' cause" for Defendant's decision to terminate Cruz's employment. See Gross, 557 U.S. at 176-78, 180.

## II.   Plaintiff's sexual-orientation claim under Title VII

Turning to Cruz's sexual-orientation discrimination claim under Title VII, Cruz has established a prima facie case. And as discussed, Defendant has proffered a legitimate, nondiscriminatory rationale for Cruz's termination. However, akin to his ADEA claim, Cruz has not demonstrated pretext. Although there is a genuine dispute of fact as to whether Shah knew

that Cruz is gay,[13] for purposes of this decision, the Court assumes that Shah knew that Cruz is

gay. Nevertheless, as discussed below, Cruz fails to show a causal connection between

Defendant's conduct and his termination. As such, Cruz has failed to present evidence from

which a reasonable juror could conclude that sexual orientation discrimination was either the true

reason or a motivating factor for his termination from the firm.

Beginning with Cruz's burden to establish a prima facie case of discrimination, Cruz is a

gay man and thus belongs to a protected class. See Cargian, 2021 WL 4780327, at *7.

Additionally, Cruz's termination was an adverse employment action. Lambert, 304 F. Supp. 3d

at 417. Further, as already noted, Cruz was qualified for the position he held because his

performance evaluations and reviews were "positive overall." See supra pp. 15-16; De la Cruz,

82 F.3d at 21; ECF No. 33-1 (Cruz performance reviews). Lastly, Plaintiff has shown that his

termination occurred under circumstances giving rise to an inference of discrimination.

Circumstances contributing to an inference of discrimination may include, among other things,

more favorable treatment of "similarly situated" employees outside of the protected class. See

Abdu-Brisson, 239 F.3d at 468. Cruz claims that Shah "would speak and smile at" his

heterosexual colleagues, and "was friendly with Cruz's straight colleagues, greeted them in the

morning, and held meetings with them," but that Shah would "actively ignore" him and "not

smile at him." Statement of Additional Material Facts ¶¶ 28, 35-37, 46; Cruz Decl. ¶¶ 17, 21;

Cruz. Dep. Tr. at 62, 70-73; Pl.'s Br. at 1, 4-5. Cruz also asserts that one colleague had told him

---

[13] According to Cruz, he told Shah that he was gay during a meeting in 2018, and was
openly gay in the office. See R. 56.1 Statement ¶ 22; Statement of Additional Material Facts ¶
32; Cruz Dep. Tr. at 65. Shah denies being aware that Cruz is gay. See R. 56.1 Statement ¶ 106;
Shah Dep. Tr. at 27-29; Decl. of Robert Shah ("Shah Decl.") ¶ 10, ECF No. 24. O'Donnell
testified that she knew Cruz is gay, and that others at the firm "probably" knew as well. See
O'Donnell Dep. Tr. at 23-25.

that she believed Shah was treating Cruz differently because Shah was homophobic. Statement of Additional Material Facts ¶ 36; Cruz Dep. Tr. at 73. Given the low burden at this stage, Cruz's allegations that Shah treated him differently than other similarly situated employees outside of the protected class are sufficient to satisfy the final prong of a prima facie case.[14]

Turning to Defendant, as already discussed, Defendant has demonstrated legitimate, non-discriminatory business reasons for Cruz's termination. See supra pp. 17-19. The burden thus shifts back to Cruz to demonstrate that Defendant's proffered legitimate, non-discriminatory reasons supporting his termination are merely a pretext for discrimination. As explained below, Cruz has failed to demonstrate that here.

To demonstrate pretext, Plaintiff points to the following: (1) Shah gave him "nasty looks" and ignored him; (2) Shah and O'Donnell laughed at his screensaver depicting a rainbow-colored Puerto Rican flag; and (3) his complaint to Defendant about Shah's homophobic conduct was ignored. See Pl.'s Br. at 19-23. None of these circumstances, even if viewed collectively, suffice to show that the real reason for Cruz's termination was animus towards him because he is gay.

First, Cruz claims that Shah harbored discriminatory animus towards him because Shah gave him "nasty looks," "wouldn't smile" at him, "look[ed] at him with disgust," and would ignore him (but not other heterosexual colleagues). R. 56.1 Statement ¶ 81; Statement of Additional Material Facts ¶ 35. According to Cruz, Shah "never" spoke to him directly, and Cruz

---

[14] As is true for discrimination claims under the ADEA "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage of the Title VII analysis." Zimmermann, 251 F.3d at 381. Here, however, there is no undisputed fact (or other statement in the record) as to whether Villatoro, Cruz's purported replacement, is a heterosexual women. Cruz asserts that O'Donnell, who took over some of his job responsibilities following his termination, is heterosexual. See Pl.'s Br. at 19; Statement of Additional Material Facts ¶ 46. But there is no undisputed fact to that effect either.

attributes Shah's "refusal to communicate" to Shah's homophobia. Statement of Additional

Material Facts ¶¶ 27, 30; see Cruz Dep. Tr. at 24, 61, 66. Conduct of this sort, however, does not

support an inference of discrimination. See Edwards v. New York State Off. of Mental Health,

No. 16-CV-1397 (BMC), 2017 WL 666227, at *4-6 (E.D.N.Y. Feb. 20, 2017) (explaining that "a

facial expression" is "not an invidious comment" and thus "a disagreeable facial expression"

does not "evince[ ] discrimination"); Grant, 2015 WL 1499724, at *8-9 (habit of sighing when

Plaintiff spoke "fail[ed] to demonstrate discriminatory animus" and was "insufficient to raise a

triable issue as to pretext"); Peters v. Mount Sinai Hosp., 08-CV-7250 (CM), 2010 WL 1372686,

at *5, *10 (S.D.N.Y. Mar. 30, 2010) (holding that plaintiff's subjective assessment of

supervisor's attitude, including supervisor's "annoyed demeanor," facial expressions, and

sighing, was insufficient to create a dispute of fact as to pretext); Chery v. City Univ. of N.Y.,

No. 06-CV-2903 (RJD) (LB), 2008 WL 858989, at *3-4 (E.D.N.Y. Mar. 31, 2009) (granting

summary judgment where evidence of discrimination was based on perceived "facial expression"

of "mockery and insult," concluding that "without more," such conduct "fails to demonstrate

discriminatory intent"), aff'd, 350 F. App'x 527 (2d. Cir. 2009); Nieves v. Avalonbay

Communities, Inc., No. 06-CV-00198 (DJS), 2007 WL 2422281, at *10 (D. Conn. Aug. 23,

2007) (holding that tone and facial expression of employer are not sufficiently indicative of

racial discrimination where no other evidence is presented); see also Fiorillo v. United Techs.

Corp., No. 13-CV-1287 (VLB), 2016 WL 1118789, at *21 (D. Conn. Mar. 21, 2016) (finding

"unspecified facial gestures and verbal tones . . . do not evince an objectively hostile work

environment" based on one's "subjective belief").

     Cruz admits that neither Shah, nor anyone else at the firm, ever (1) called him an

offensive word or name; (2) showed him any pictures, images, or cartoons that he found

offensive; (3) told any jokes that he regarded as offensive; (4) expressed any political views that made him uncomfortable; or (5) made any other comments that made him feel unwelcome or singled out because of his sexual orientation. See R. 56.1 Statement ¶¶ 87, 91, 94-97. Against this backdrop, Shah's angry facial expressions although "rude and unprofessional" do not establish an inference of discrimination based on sexual orientation. See Wilson v. Family Dollar Stores of N.Y., Inc., No. 06-CV-639 (DGT), 2008 WL 4426957, at *7-8 (E.D.N.Y. Sept. 25, 2008) (reasoning that "angry facial expressions" were insufficient to infer discriminatory animus).

Moreover, although an inference of discrimination may arise from "more favorable treatment of employees not in the protected group," Leibowitz, 584 F.3d at 502, Cruz has not offered any evidence that Shah treated heterosexual employees "materially differently" from him. See Wilson, 2008 WL 4426957, at *6, 8 (plaintiff's claims that defendant engaged in "favoritism" did not violate Title VII). It is undisputed that Shah did not socialize at work, that all of his meetings were work-related, and that Shah never refused to meet with Cruz. R. 56.1 Statement ¶¶ 53, 107. Cruz relies on bare assertions that Shah "would speak and smile at" his heterosexual colleagues, and that Shah "was friendly with Cruz's straight colleagues," but that Shah would "actively ignore" him. Statement of Additional Material Facts ¶¶ 35, 46; Cruz. Dep. Tr. at 70-72; Cruz Decl. ¶ 21. But Cruz offers no evidence tending to show that Shah's behavior was in any way related to Cruz's sexual orientation. See, e.g., Barnes v. CCH Corp. Sys., No. 01-CV-2575 (AKH), 2004 WL 1516791, at *6 (S.D.N.Y. Jul. 7, 2004) (granting summary judgment where plaintiff "offer[ed] no evidence showing that" defendants' social ostracism and failure to thank plaintiff for gifts "had any nexus with [plaintiff's] race, gender, or disease status"). To prevent Title VII from "expanding into a general civility code," a plaintiff must show that the

treatment complained of constituted discrimination "*because of*" his membership in a protected class. Id. (citation omitted; emphasis added). Establishing such a nexus "requires some circumstantial or other basis for inferring that incidents" that are "neutral on their face were in fact discriminatory." See id. (quoting Alfano v. Costello, 294 F.3d 365, 378 (2d Cir. 2002)) (alteration added). Plaintiff has not established such a nexus here. Each of the incidents cited by Cruz are neutral on their face, and Cruz has offered no evidence from which a reasonable factfinder could conclude that the incidents were in fact based on Shah's animus towards gay individuals. See Alfano, 294 F.3d at 378 (noting facially neutral incidents may be included among the "totality of the circumstances" in evaluating Title VII claims "so long as a reasonable fact-finder could conclude that they were, in fact, based on sex").

Second, Cruz points to an incident involving Shah and O'Donnell laughing at Cruz's computer screen. Cruz claims that he found Shah and O'Donnell laughing and pointing at his computer screensaver, which featured a picture of a rainbow-patterned Puerto Rican flag, and that Shah and O'Donnell stopped laughing and walked away when he asked what was funny.[15] See R. 56.1 Statement ¶¶ 81-82, 88. Even assuming that the incident occurred as Cruz describes it, the incident occurred in 2018. See Statement of Additional Material Facts ¶ 90; Cruz Dep. Tr. at 67. It is undisputed that Cruz was not terminated until June 2019. See R. 56.1 Statement ¶ 116. Therefore, even if the incident occurred in December of 2018, it still occurred at least 6 months

---

[15] Cruz states that the rainbow represents LGBTQ+ pride. See Statement of Additional Material Facts ¶ 87; Cruz. Decl. ¶ 10. Both Shah and O'Donnell deny laughing at the screensaver. R. 56.1 Statement ¶¶ 83-84. Shah and O'Donnell testified that they do not recall the flag being rainbow-colored, and Shah testified that he did not realize until the litigation that the flag was intended to indicate Cruz's sexual orientation. Id. ¶¶ 84-86, 89. While there is a genuine dispute of fact as to whether this incident occurred, it is of no matter because, for the reasons discussed herein, Cruz does not allege a causal link between the incident and his termination sufficient to establish that Defendant's reasons for his termination were pretextual.

prior to Cruz's termination. Because the incident was too temporally remote from Cruz's termination, Cruz has not established a causal nexus between the incident and his termination. See Moore, 2016 WL 825001, at *8-9 (comments made "at least months" before adverse action were not actionable); Woodard, 2011 WL 70386, at *7, 10 (finding comments made "approximately eight months before Plaintiff's termination" were "temporally remote from the date of [the] decision," and noting that "many courts in this circuit have held that periods of two months or more defeat an inference of causation") (citations omitted); Galimore v. City Univ. of New York Bronx Cmty. Coll., 641 F.Supp.2d 269, 286 (S.D.N.Y. 2009) ("The comments were not made in connection with the decision-making process, and are otherwise not sufficiently pervasive or severe enough, even considered in conjunction with . . . other alleged behavior . . . , to raise a triable issue of fact as to whether Defendant's stated reasons for terminating Plaintiff's employment were pretextual.").

Finally, Cruz alleges that in 2018, he complained to Defendant's Director of Human Resources, Genie Principe, about Shah's homophobia and discrimination. Cruz told Principe that he believed that Shah had been ignoring and refusing to speak with him because Cruz is gay.[16] See Statement of Additional Material Facts ¶ 40; Cruz Decl. ¶ 18; Cruz Dep. Tr. at 77-81, 83-86. According to Cruz, Principe responded by saying that O'Donnell would be a "good buffer" between them. Statement of Additional Material Facts ¶ 41; Cruz Decl. ¶ 19; Cruz Dep. Tr. at 78, 84. Principe did not ask Cruz if he wanted to file a formal complaint, and Cruz claims that Principe did not speak with Shah. Statement of Additional Material Facts ¶ 43; Cruz. Dep. Tr. at 80-81, 84; see also Shah Dep. Tr. at 35-36. Plaintiff argues that in failing to take any action

---

[16] Defendant denies this occurred, see Def.'s Reply Br. at 8-9, and states that it "has no record of Charlie Cruz ever submitting a complaint of discrimination against Robert Shah," see Blessing Decl. ¶ 2.

following his complaint about Shah's "homophobia," Principe violated Defendant's internal policy that required the commencement of an investigation. See Pl.'s Br. at 22-23.

Even if the Court credits Plaintiff's allegations that he made the complaint to Defendant about Shah, Plaintiff has not shown that Defendant's response to the complaint was due to animus towards Cruz because of his sexual orientation. Cruz merely speculates that his complaint was not addressed because of discrimination, without any factual support for his belief that the firm's response was due to discriminatory animus. See Jimenez v. City of New York, 605 F.Supp.2d 485, 522 (S.D.N.Y. 2009) (finding that "Plaintiff submit[ted] no evidence to support [his] supposition" that those "who screened resumes were using legally forbidden criteria to weed out candidates," but instead "merely speculate[d] that they might have done so"). Moreover, Cruz has not demonstrated a causal nexus between the complaint and his termination. Cruz submitted the complaint about Shah in 2018, the year prior to his 2019 termination. See Statement of Additional Material Facts ¶¶ 40, 116; Cruz Dep. Tr. at 80. Cruz thus has not demonstrated any temporal proximity between the filing of the complaint and Defendant's decision to terminate Cruz's employment. See Moore, 2016 WL 825001, at *8-9; Woodard, 2011 WL 70386, at *7, 10.

At bottom, the evidence offered by Cruz is insufficient to support a finding that Defendant's "proffered reason[s] [were] pretext for discrimination." Grant, 2015 WL 1499724, at *6 (citing Patterson v. Cnty. of Oneida, 375 F.3d 206, 221 (2d Cir. 2004)); see also Peters, 2010 WL 1372686, at *12 ("When an employer articulates a non-discriminatory performance-based reason for taking adverse action against an employee, courts have consistently held that the wisdom of the decision should not be second-guessed in the absence of any overt evidence of discrimination."). In short, considering all of the evidence in the record and granting Cruz all

inferences he is entitled to, Plaintiff has failed to meet its burden of adducing sufficient evidence to support a jury finding that he was terminated for discriminatory reasons.

## III.   <u>Plaintiff's NYCHRL Claims</u>

In analyzing whether a plaintiff has raised a triable issue of fact concerning whether his termination was motivated by discriminatory animus under the NYCHRL, courts employ the <u>McDonnell Douglas</u> framework. See <u>Kerman-Mastour v. Fin. Indus. Regul. Auth., Inc.</u>, 814 F. Supp. 2d 355, 367-68 (S.D.N.Y. 2011). But Courts also consider a plaintiff's claim under the "mixed motive" theory. Under this approach, "a plaintiff who . . . claims that the employer acted with mixed motives is not required to prove that the employer's stated reason was a pretext." <u>Holcomb</u>, 521 F.3d at 141-42. "A plaintiff alleging that an employment decision was motivated both by legitimate and illegitimate reasons may establish that the 'impermissible factor was a motivating factor, without proving that the employer's proffered explanation was not some part of the employer's motivation.'" <u>Id.</u> (quoting <u>Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities</u>, 115 F.3d 116, 120 (2d Cir. 1997).

To prevail on a discrimination claim under the NYCHRL, "the plaintiff need only show differential treatment—that [he] [was] treated 'less well'—because of a discriminatory intent." <u>Mihalik</u>, 715 F.3d at 110 (citation omitted); <u>see also</u> <u>Williams</u>, 2017 WL 1162908, at *9 (explaining that the NYCHRL does not require "severe and pervasive conduct"). Even if the plaintiff establishes that he was treated less well "because of" the protected characteristic, defendants may "still avoid liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences.'" <u>Mihalik</u>, 715 F.3d at 111 (quoting <u>Oncale v. Sundowner Offshore Servs.</u>, 523 U.S. 75, 81 (1998)). Courts must consider the "totality of the circumstances," and the

overall context in which the challenged conduct occurs cannot be ignored. Id. (citations omitted).

An employer may nevertheless "prevail on summary judgment if it shows that a reasonable jury

could conclude only that the conduct amounted to no more than a petty slight." Id. (citing

Williams v. New York City Housing Auth., 61 A.D. 62, 80 (1st Dep't 2009)).

      In an age-discrimination case under the NYCHRL, a plaintiff must point to evidence

"from which a reasonable juror could conclude that age was a motivating factor in the decision to

terminate [him]." See Clarke-Green v. New York City Dep't of Educ., No. 17-CV-778

(EK)(VMS), 2022 WL 4643385, at *23 (E.D.N.Y. Aug. 2, 2022), report and recommendation

adopted, 2022 WL 4662010 (E.D.N.Y. Sept. 30, 2022). Plaintiff has not done so here. As with

the ADEA, the lone, stray remarks by Shah about his own gray hair do not suffice to raise an

inference of discriminatory motive under the NYCHRL. See Williams, 2017 WL 1162908, at *8-

9 (finding plaintiff's allegations of age discrimination, including that plaintiff's supervisor

"repeatedly" stated that plaintiff was "getting old," were non-actionable stray remarks, and that

plaintiff "lack[ed] supporting facts sufficient to raise an inference of a discriminatory motive" to

support a claim under the NYCHRL); Lent v. City of New York, 209 A.D.3d 494, 495 (1st Dep't

2022) (alleged stray remark by defendant that plaintiff was "old enough to retire" did not,

without more, give rise to an inference of ageist bias); Kerman-Mastour, 814 F. Supp. 2d at 372

(finding that "[a] single alleged inappropriate remark by a supervisor" was not sufficient to

"defeat summary judgment where the defendant adduced substantial evidence" that plaintiff

"was not meeting a requirement of her job"); Rodriguez v. City of New York, No. 09-CV-1378

(KAM) (RER), 2011 WL 3610751, at *12 (E.D.N.Y. Aug. 16, 2011) (granting defendant's

motion for summary judgment on plaintiff's NYCHRL age-discrimination claim where the

"allegedly ageist comments occurred too temporally distant from plaintiff's termination"), aff'd,

484 Fed. App'x 637 (2d Cir. 2012). Likewise, for the reasons discussed, see supra pp. 19-23, Plaintiff's flawed statistical evidence also does not suffice to raise an inference of discriminatory motive under the NYCHRL. See Twomey v. Quad/Graphics, Inc., No. 13-CV-1109 (RA), 2015 WL 5698002, at *9-10 (S.D.N.Y. Sept. 28, 2015) (granting summary judgment for defendant on age-discrimination claim under the NYCHRL where the plaintiff asserted his termination was part of a "pattern of terminating the oldest employees," noting that "there is no statistical or other evidence in the record regarding the average age" of the subject employees) (internal quotation marks omitted); see also Hamburg v. New York Univ. Sch. of Med., 155 A.D.3d 66, 76-77 (1st Dep't 2017) (finding no inference of age discrimination "[a]bsent evidence that younger physicians of equal or lesser qualifications than plaintiff's received more favorable treatment than she did" and based on "the retention of three physicians of essentially the same age as plaintiff").

Cruz's NYCHRL claim based on sexual-orientation discrimination fares no better. "[E]ven under the more liberal NYCHRL, summary judgment will still be appropriate where a plaintiff does not adduce sufficient evidence of a link between his termination and a discriminatory motive and where he fails to rebut convincing evidence that his employer treated him differently for legitimate business reasons, rather than due to membership in a protected group." Kerman-Mastour, 814 F. Supp. 2d at 367 (citing cases). Here, Cruz fails to show that he was treated less well by Shah because of his sexual orientation. See Williams, 61 A.D.3d at 78-79. To the extent Cruz points to Shah ignoring him and Shah's angry facial expressions, it is undisputed that Shah did not socialize at work and that Shah never refused to meet with Cruz. R. 56.1 Statement ¶¶ 53, 107. And, Shah's angry facial expressions "consist[ ] of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial

inconveniences." <u>Williams</u>, 61 A.D.3d at 79-80 (explaining that the NYCHRL is not a "general civility code") (citation and internal quotation marks omitted).

Further, Cruz proffers no evidence to draw a connection between Shah's conduct of laughing at the computer screensaver and a discriminatory motive. <u>See</u> <u>South v. Cont'l Cas. Co.</u>, No. 17-CV-5741, 2018 WL 4689106, at *11 (S.D.N.Y. Sept. 27, 2018) (noting a "temporal relationship is typically required to establish that an adverse employment action was motivated, at least in party, by [discriminatory] animus"); <u>Osborne v. Moody's Investors Serv., Inc.</u>, No. 17-CV-1859 (ALC), 2018 WL 1441392, at *4 (S.D.N.Y. Mar. 22, 2018) (in assessing NYCHRL claim at motion to dismiss stage, acknowledging that there is no "bright-line rule for when remarks become too attenuated," but nonetheless concluding that eight months between remarks and plaintiff's termination was insufficient to give rise to inference of discriminatory animus, particularly where there is no explanation of how remarks related to her termination) (citation and internal quotation marks omitted); <u>Nidzon v. Konica Minolta Bus. Corp.</u>, 752 F. Supp. 2d 336, 351-52 (S.D.N.Y. 2010) (period of thirteen and nineteen months too long to infer discriminatory intent underlying adverse employment action from remarks with respect to Title VII, NYSHRL, and NYCHRL claims).

And, in any event, even if there were temporal proximity between Shah's conduct and Plaintiff's termination, the incident concerning Cruz's computer screen also does not amount to circumstances that could be reasonably interpreted by a trier of fact as representing "more than petty slights or trivial inconveniences." <u>See</u> <u>Williams</u>, 61 A.D.3d at 80 (holding that comments, made in female employee's presence that were not directed at her, were nothing more than petty slights or trivial inconveniences, insufficient to support sexual harassment claim); <u>Kerman-Mastour</u>, 814 F. Supp. 2d at 368-69 (supervisor's comments about Jewish holidays made in a

"sarcastic tone of voice" were found to be "pretty benign" and only "petty slights" and thus not

actionable under NYCHRL); Golston-Green v. City of New York, 184 A.D.3d 24, 43 (2d Dep't

2020) (allegations supported by "only a single comment which [was] not facially racially

derogatory," even if "construed to have such a negative connotation," did not "give rise to

anything more than a 'petty slight' or 'trivial inconvenience'"); Kim v. Goldberg, Weprin,

Finkel, Goldstein, LLP, 120 A.D.3d 18, 19 (1st Dep't 2014) (finding defendant's conduct did not

support employee's gender-based, hostile-work-environment claims under the NYCHRL, "since

a reasonable person would consider the complained-of conduct," including "only isolated

remarks or incidents," as "nothing more than petty slights and trivial inconveniences") (citation

and internal quotation marks omitted); Rogers v. Bank of New York Mellon, No. 09-CV-8551

(HBP), 2016 WL 4362204, at *19 (S.D.N.Y. Aug. 15, 2016) ("under the NYCHRL, plaintiff's

claim that she was once called a 'crazy black bitch' . . . does not constitute anything more than a

petty slight"); cf. Mihalik, 715 F.3d at 113-15. (employer's "sexual advances and demeaning

behavior," including "openly viewing and sharing pornography, discussing . . . jaunts to strip

clubs, rating the female employees' appearances, and making lascivious comments about

women's outfits and bodies," constituted "more than 'petty slights or trivial inconveniences'").

Accordingly, because Cruz has failed to establish that Defendant's conduct was

motivated by a discriminatory intent, Defendant is entitled to summary judgment on Cruz's

claims under the NYCHRL for age and sexual-orientation discrimination.

### CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment is **GRANTED**.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 21.

**SO ORDERED.**

DATED:     New York, New York
             March 29, 2023

_____
VALERIE FIGUEREDO
United States Magistrate Judge